*In re* MARRIAGE OF EDNA T. SANBORN, Petitioner-Appellee, and EARL B. SANBORN, M.D., Respondent-Appellant.

First District (3rd Division)   Nos. 78-1937, 79-106 cons.

Opinion filed October 24, 1979.

Beermann, Swerdlove, Woloshin & Barezky, of Chicago (Miles N. Beermann and Howard A. London, of counsel), for appellant.

John J. Casey, of Chicago, for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

On March 6, 1978, the marriage of petitioner, Edna T. Sanborn, and respondent, Earl B. Sanborn, was dissolved. The matter before us arises out of the post-judgment proceedings in that dissolution. Respondent appeals from a provision in the judgment which directs him to convey his interest in their marital home to petitioner; from the denial of his post-trial motion; from the order allowing petitioner attorney's fees to defend the post-trial motion; and from an order granting her fees to defend this appeal.

The judgment for dissolution of the marriage was entered by Judge Raymond P. Drymalski. Questions relating to property, maintenance, support, and attorney's fees were considered at a later hearing. At the hearing before Judge Drymalski, the parties stipulated they were married in 1946; that they had four children, three of whom were no longer living at home; that petitioner, a nurse, earned $1,339 per month and owned stock worth $2,842; that respondent, a doctor, earned $2,916 per month, collected military retirement benefits of $332 per month, and owned bonds worth $27,000 and stock worth $1,600; that each party owned an automobile; and that the parties owned a marital residence in joint tenancy. They stipulated to its fair market value as follows:

"There is a marital residence in Kenilworth, Illinois, which as of September 13, '76 was valued at $142,000."

After considering the evidence and hearing arguments of counsel, Judge Drymalski, on April 6, 1978, directed respondent to convey his interest in the marital residence to petitioner as an award of maintenance in gross. In so ruling, the judge stated: "The marital home will be granted to the wife * * *. I think the fair thing to do here is that he convey his interest [in the home], which gives her approximately seventy or $71,000 of value; that she be denied maintenance for the future." The court found that an award of maintenance in gross was appropriate in view of petitioner's contribution to the value of the marital home and the duration of the marriage, and because such award would lead to a final settlement of the parties' disputes and eliminate financial bickering. On April 24, 1978, the trial court signed an order containing the foregoing provisions.

On May 24, 1978, respondent filed a motion under section 68.3 of the Civil Practice Act, Ill. Rev. Stat. 1977, ch. 110, par. 68.3, asking for a rehearing on the disposition of the marital residence and for vacation of that portion of the judgment awarding the home to petitioner. The motion recited that after entry of the judgment, respondent discovered new evidence revealing that the actual value of the residence in 1978 was substantially higher than the appraisal of $142,000. In support of the motion, respondent offered a written appraisal dated May 22, 1978, which indicated that the value of the marital residence was between $225,000

and $250,000. Respondent argued therefore that the award of the home was unjust since it gave petitioner an asset far in excess of $71,000, and that such award would not have been made had the court been aware of the higher valuation.

Judge Drymalski retired from the court and the case was assigned to Judge John J. Crown. On July 20, 1978, having considered the evidence and arguments of counsel, Judge Crown denied respondent's post-trial motion, finding that respondent failed to show due diligence in discovering the allegedly new evidence concerning the value of the marital residence. The Judge also observed that, in view of the duration of the marriage and earning capacity of respondent, it would not be unusual for petitioner to receive sole ownership of the residence in exchange for a waiver of maintenance and other marital rights.

On appeal, respondent initially contends that the portion of the judgment awarding the home to petitioner is based on a grossly erroneous valuation and therefore must be reversed. In essence, he urges that the court erred in relying on the 1976 stipulated value of the home, and in failing to take judicial notice that its fair market value had increased since 1976. To address the argument, it is necessary to consider the chronology of events leading up to the property disposition.

On October 3, 1977, petitioner filed a petition for dissolution of marriage and requested sole and exclusive ownership of the marital residence. On October 12, 1977, she submitted interrogatories to respondent. Among the interrogatories was one asking respondent to supply the present estimated value of any real estate he owned. Respondent then delivered the aforementioned appraisal to his attorney indicating the value of the marital home was $141,980 as of September 13, 1976. This appraisal was forwarded to petitioner's attorney. On November 8, 1977, petitioner's attorney submitted a pretrial memorandum to the court and to respondent's attorney listing the value of the residence at $140,000. On January 12, 1978, respondent filed answers to all of petitioner's interrogatories except the one asking for estimated value of realty owned. On January 31, 1978, respondent filed a counterpetition for dissolution in which he asked that he be awarded the marital residence. At the proceeding of April 6, 1978, at which the stipulated value of $142,000 was introduced, neither party offered additional evidence concerning the value of the residence.

■■ Parties are bound by their stipulations unless such stipulations are shown to be unreasonable, the result of fraud or violative of public policy. (*Filko v. Filko* (1970), 127 Ill. App. 2d 10, 262 N.E.2d 88; *In re Estate of Moss* (1969), 109 Ill. App. 2d 185, 248 N.E.2d 513; *Kazubowski v. Kazubowski* (1968), 93 Ill. App. 2d 126, 235 N.E.2d 664, *cert. denied* (1969), 393 U.S. 1117.) Moreover, a party cannot challenge a valid and

binding stipulation on the basis of some mental reservation not expressed in the stipulation. *Roin v. Checker Taxi Co.* (1962), 36 Ill. App. 2d 447, 184 N.E.2d 736.

■■ Respondent does not suggest that the stipulation was the result of fraud or contrary to public policy. Rather, he urges that he should not be bound by the stipulated value of September 1976 because it did not accurately reflect the true value of the home at the time of the property disposition in 1978. This argument overlooks the fact that it was respondent who submitted that appraisal value and permitted it to be introduced into evidence unchallenged. If respondent had any doubts concerning the accuracy of the appraisal he supplied, he had ample opportunity prior to the disposition of the marital residence to ascertain and correct any error in valuation. Respondent's present determination that the home has a greater value than he initially represented does not justify setting aside the stipulated fact. See *Horwich v. Horwich* (1979), 68 Ill. App. 3d 518, 386 N.E.2d 620.

■■ It was reasonable for the trial court to accept the 1976 appraisal contained in the parties' stipulation and pretrial memorandum as indicative of the value of the marital residence in 1978. (See *Ayers v. Ayers* (1978), 61 Ill. App. 3d 936, 378 N.E.2d 792.) Since the amount was uncontroverted at trial, both parties presumably presented the 1976 appraisal as if it reflected the current market value. We find no merit in respondent's argument that despite the absence of any dispute regarding the home's value, the trial court should have taken judicial notice that inflation had caused the marital residence to appreciate in value since 1976. Courts ordinarily refrain from taking judicial notice of the value of specific realty inasmuch as innumerable factors may affect such value. *222 East Chestnut Street Corp. v. Board of Appeals* (1958), 14 Ill. 2d 190, 152 N.E.2d 465.

Respondent next contends that the trial court erred in denying his motion under section 68.3 of the Civil Practice Act to vacate the award of the residence to petitioner and for rehearing on the disposition of the residence. Respondent argues that his newly discovered evidence as to the home's enhanced value entitled him to a vacation of that part of the judgment. The purpose of a motion to vacate is to alert the trial court to errors it has made and to afford an opportunity for their correction. (*Abbey Plumbing & Heating, Inc. v. Brown* (1977), 47 Ill. App. 3d 719, 365 N.E.2d 115.) Since we do not regard the court's reliance on the stipulation as erroneous, the denial of the motion to vacate was proper.

Moreover, to justify a rehearing on the basis of newly discovered evidence, there must be a showing of due diligence and a demonstration that justice has not been done. *Drehle v. Fleming* (1970), 129 Ill. App. 2d 166, 263 N.E.2d 348, *aff'd* (1971), 49 Ill. 2d 293, 274 N.E.2d 53.

■ Respondent failed to show due diligence in that he did not secure a more recent appraisal of the home until after the hearing. He attempts to avoid his lack of diligence by arguing that the actual value of the residence was not an important issue until the trial court awarded the residence to petitioner as maintenance in gross and stated that such an award afforded petitioner $71,000 in value. The argument lacks merit because value became important prior to trial when both parties sought ownership of the home, and especially when petitioner by her interrogatories sought to learn the value of the home.

■ Additionally, a rehearing is not warranted unless the newly discovered evidence is of such conclusive or decisive character as to make it probable that a different judgment would be reached in another trial. (*Powers v. Sturm* (1973), 12 Ill. App. 3d 346, 297 N.E.2d 628.) It is not clear whether the stipulated value was a decisive factor in the trial court's decision to award the marital residence to petitioner. Respondent has failed to demonstrate that the court would have refused to award the home to petitioner, no matter what its value, since value is only one factor to be considered by the court in disposing of the marital property. (Ill. Rev. Stat. 1977, ch. 40, par. 503; *Ayers v. Ayers* (1978), 61 Ill. App. 3d 936, 378 N.E.2d 792.) In view of the duration of the marriage, the contribution of petitioner to the value of the residence and the court's desire to settle the parties' financial disputes, the same outcome would be likely notwithstanding the property's changed value. The court did not err in denying respondent's motion to vacate that portion of the judgment or his motion for a rehearing.

Respondent also contends that the trial court erred in allowing petitioner attorney's fees to defend the post-trial motion and the appeal. On August 23, 1978, petitioner requested and was granted $2,000 attorney's fees for the defense of respondent's post-trial motion. Evidence at that hearing revealed that petitioner earned approximately $16,000 per year and had $1,500 in savings, and that respondent had an annual income of between $30,000 and $35,000.

On September 7, 1978, petitioner filed a petition seeking attorney's fees to defend the appeal. Respondent filed a motion to dismiss the petition or, in the alternative, an answer in which he requested an evidentiary hearing on the parties' respective abilities to pay attorney's fees. After considering the pleadings and arguments of counsel, no evidence or testimony having been introduced, the court directed respondent to pay a minimum of 35% and maximum of 50% of petitioner's attorney's fees in defending this appeal and to make an advance payment of $2,000.

■ The Illinois Marriage and Dissolution of Marriage Act authorizes the allowance of attorney's fees to parties for the defense of proceedings

including the defense of appeals. (Ill. Rev. Stat. 1977, ch. 40, par. 508.) Attorney's fees in a dissolution of marriage proceeding are the primary obligation of the party for whom the services are rendered. (See *Moore v. Moore* (1977), 53 Ill. App. 3d 228, 368 N.E.2d 545.) The allowance of attorney's fees to the opposing party is justified, however, where the party seeking relief demonstrates financial inability to pay and the ability of the other spouse to do so. (*Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 373 N.E.2d 576.) Financial inability exists where to enforce payment of available funds would strip the person of the means of her support and undermine her economic stability. (*Kaufman v. Kaufman* (1974), 22 Ill. App. 3d 1045, 318 N.E.2d 282.) Allowance of attorney's fees rests in the sound discretion of the trial court, and the exercise of that discretion will not be disturbed unless clearly abused. *Canady v. Canady* (1964), 30 Ill. 2d 440, 197 N.E.2d 42; *Kolar v. Kolar* (1977), 47 Ill. App. 3d 37, 361 N.E.2d 751.

■■ The evidence in the present case does not demonstrate that petitioner was financially unable to pay her own attorney's fees. She was earning approximately $16,000 per year, had savings of $1,500 and stock worth $2,842. Additionally, the court awarded her ownership of the marital residence which had a market value of at least $142,000. Under these facts and circumstances, the trial court erred in allowing petitioner attorney's fees for defense of the post-trial motion and the appeal.

For the reasons stated, the judgment of the circuit court of Cook County awarding the marital residence to petitioner is affirmed. The judgments ordering respondent to pay petitioner attorney's fees to defend the post-trial motion and the appeal are reversed.

Affirmed in part; reversed in part.

SIMON, P. J., and RIZZI, J., concur.