RAHILL CORPORATION, Plaintiff and Counterdefendant-Appellant, *v.* MICHAEL L. URBANSKI *et al.*, Defendants-Appellees (Urbanski Van Service, Inc., Defendant and Counterclaimant and Counterdefendant and Third-Party Plaintiff-Appellee; Michael J. Moran, Third-Party Defendant and Counterplaintiff; Michael L. Urbanski, Third-Party Defendant).

First District (5th Division)   No. 83—1659

Opinion filed April 13, 1984.

Richard W. Huszagh, of Chicago, for appellant.

Hall Triplett, of Chicago, for appellees.

JUSTICE SULLIVAN delivered the opinion of the court:
This appeal is from a partial summary judgment for defendant

Urbanski Van Service, Inc. (Van Service), allowing recovery of an amount allegedly due it under an equipment lease. The sole issue before us is the propriety of the trial court's denial of plaintiff's motion for modification or vacation of that judgment.

Van Service, an Illinois corporation, holds a certificate of public convenience and necessity from the Illinois Commerce Commission (the ICC certificate) which authorizes it to operate as a common carrier. On March 18, 1980, defendant Michael L. Urbanski (Urbanski), sole owner of the outstanding shares of Van Service, entered into two agreements with plaintiff Rahill Corporation (Rahill). In the first, Urbanski agreed to sell Rahill 49% of his shares of Van Service (the purchase agreement), with the purchase price to be paid in several monthly installments. The shares were to be held in escrow pending receipt of all payments due from Rahill. Under the second agreement, Rahill was granted an option to purchase the remaining 51% of the outstanding shares at any time prior to December 31, 1982 (the option agreement), the consideration therefor to be paid by Rahill in 14 monthly installments. It was further agreed that Urbanski would cooperate with Rahill, as its agent in managing Van Service, by entering into necessary contracts and agreements, including equipment leases, pending completion of the two agreements.

For reasons not pertinent hereto, Urbanski notified Rahill on January 28, 1981, that it was in default on the installment payments due under the purchase agreement, and that he was terminating that agreement, as well as the option agreement, pursuant to the terms thereof. Rahill denied that any breach had occurred and continued to tender the payments required under the agreements and to engage in business as a common carrier using the name of Urbanski Van Service, Inc., or some variant thereof, and purporting to operate pursuant to the authority granted by Van Service's ICC certificate. The only business conducted which is pertinent to the instant appeal involved the leasing of equipment. Rahill asserted that it purchased seven leases entered into between Van Service and G.T.S., Inc., on November 9, 1979, under which Van Service leased for a period of three years several vehicles owned by G.T.S. (the G.T.S. leases). Rahill's allegations are unclear, but it is assumed that Rahill purchased the equipment described in the leases, rather than merely the leases themselves, and was therefore G.T.S.'s successor in interest under those leases. Each lease is entitled "Illinois Commerce Commission Equipment Lease" and contains a description of the equipment to be leased and provides that it will be operated pursuant to the authority granted by Van Service's ICC certificate. Under the terms of the

leases, the lessor (G.T.S.) is to receive "80%" as compensation for the use of the equipment; however, the leases do not further explain the compensation and, although each lease bears the notation "Instructions on Reverse Side," the reverse side of the copies which appear in the record are blank.

In addition to these seven G.T.S. leases, Rahill allegedly entered into four similar leases with Van Service on February 4, 1981; each of those leases lists Rahill as the owner of the equipment and Van Service as the lessee (the Rahill leases). The forms used again appear to be preprinted forms obtained from the Illinois Commerce Commission (ICC), and also provide that compensation shall be "80%." As with the G.T.S. leases, the term "80%" is unexplained and, although the forms state that the agreement between the parties "includes the provisions set forth herein and on the reverse side hereof along with such provisions as are made part of an addendum attached thereto," the copies of the leases contained in the record are blank on the reverse side and no addenda are attached thereto. These four Rahill leases are signed by Michael Moran (Moran) as authorized agent or employee of Van Service. It appears from the pleadings that Moran is president of Rahill.

On June 4, 1981, Van Service notified Moran that he was not authorized to act on its behalf, and demanded that he and Rahill cease doing business as Urbanski Van Service, Inc. He was further notified that Van Service would take immediate action to have the ICC cancel the above leases. Rahill thereafter brought an action for specific performance of the purchase and option agreements and for damages allegedly caused by cancellation of the G.T.S. and Rahill leases. In a counterclaim, Van Service alleged that Rahill and Moran, without its authorization, were doing business as Urbanski Van Service, Inc., and purporting to act pursuant to its ICC certificate. Van Service asked the trial court to enjoin use of its name and certificate by Rahill and Moran and sought an accounting of all funds received by those parties as a result of their unauthorized use of its name and certificate.

On June 15, 1982, the trial court granted Rahill's request for a preliminary injunction and prohibited Urbanski and Van Service from selling Van Service's stock or entering into any ICC equipment leases pending a final resolution on the merits. The court further ordered Van Service to reinstate the G.T.S. and Rahill leases with the ICC, ruling that "pending the final resolution of all factual and legal issues herein, the eleven (11) Illinois Commerce Commission equipment leases cited in and attached to plaintiff's Amended Complaint *** are legally binding and effective between Rahill Corporation and Urbanski

Van Service, Inc."

No appeal was taken from the preliminary injunction, and it appears that the merits of Rahill's complaint and Van Service's counter-complaint, as well as several third-party complaints, are still pending before the trial court. However, Van Service moved for partial summary judgment on its counterclaim for compensation allegedly due it for the unauthorized use of its name and certificate. It asserted therein that the trial court had declared the leases legally effective and binding; that the compensation in all of the leases was stated at "80%"; that by policy of the ICC and by trade usage, the 80% compensation term meant that the owner of the equipment, here Rahill, was to receive 80% of the gross receipts and that the lessee thereof, here Van Service, was to receive the remaining 20%; that Rahill, by its own admission, had never transmitted any of the gross receipts to Van Service or otherwise accounted therefor; and that, as a matter of law, it was entitled to judgment against Rahill in an amount equal to 20% of the gross receipts generated by the equipment leases.

In response, Rahill asserted that there was a genuine issue of material fact regarding whether it was required to pay any portion of the gross receipts to Van Service, alleging that during negotiation of the purchase and option agreements, the parties did not discuss the payment of compensation to Van Service under the equipment leases. Rahill further maintained that it was the parties' understanding that all funds generated by the leases and otherwise payable to Van Service were to be used to pay the cost of developing Van Service's business, and that this agreement was necessary to fulfill the main purpose of the leases; *i.e.*, "to establish a course of business conduct, for the time period covered by [the agreement], in order to evidence to the Illinois Commerce Commission that [Van Service] is a vibrant and expanding business, and that [its] 'authority' had been actively used during the 24 month period prior to the parties' intended application to transfer the stock of [Van Service] from [Urbanski] to [Rahill], which proofs are prerequisite to Commission approval of such application."

The trial court granted Van Service's motion on October 8, 1982, and entered judgment in its favor "for twenty percent of all trucking revenues which were generated by services performed under Illinois Commerce Commission equipment leases in which Urbanski Van Service, Inc. was the lessee, from March 18, 1980 to the present, and which were reinstated by Court Order of June 15, 1982." The trial court's reasoning is not set forth in the order, and no transcript has been provided. However, it appears that the agreement alleged by Ra-

hill concerning disposition of Van Service's 20% of revenues is not contained in the equipment leases which the court ordered enforced pending a final disposition on the merits. Moreover, the enforceability of the alleged agreement as to Van Service's or Urbanski's duty to develop its business is a question to be resolved during a final hearing on the merits, and has no bearing on whether Van Service should receive the compensation provided in leases which the court has ordered it to perform. If it is ultimately found that Rahill breached the purchase and option agreements, as Urbanski contends, then Rahill's use of Van Service's name and certificate was wrongful, and Urbanski would have no duty to employ the revenues generated by that wrongful usage in any fashion. Conversely, if Rahill prevails on the merits and it is found that Urbanski breached the agreements, then Rahill may be entitled to damages, including damages for the failure to use the 20% of gross receipts to develop Van Service's business, if the existence of such an agreement is proved. In any event, Rahill raises no arguments on appeal concerning the alleged agreement regarding use of Van Service's revenues.

In the October 8 order, Rahill was directed to make its books and records available for inspection and to provide Van Service with a copy of an audit then in progress. Thereafter, a hearing was held to prove up the amount due under the October 8 order (no transcript of this hearing appears in the record), and on March 29, 1983, the court rendered judgment for Van Service in the amount of $250,684.36, which it found to be 20% of the gross trucking revenues received by Rahill under the equipment leases from March 18, 1980, through March 28, 1983. Rahill then moved, pursuant to section 2—1203 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1203) for vacation or modification of the partial summary judgment, asserting that the trial court's order would jeopardize the contemplated transfer of the ICC certificate from Van Service to Rahill should the trial court ultimately order specific performance of the purchase and option agreements. It reasoned that, in order to obtain necessary ICC approval of the transfer, it must show that Van Service's operations have never been abandoned, suspended, discontinued, or dormant (Ill. Rev. Stat. 1981, ch. 95½, par. 18—309(3)); that one of the factors considered by the ICC in making that determination is whether the transferor, here Van Service, has assumed the financial risk of its operations; and that, by failing to reduce the judgment by the amount of any operating expenses, the court had made it appear that Van Service was not financially responsible for operations under its certificate. Therefore, it posited, "the only way [the trial court] can insure

that the application for transfer to the Commission will not be prima facie defective is to allocate the proper portion of operating expenses to [Van Service], in accordance with the custom and usage of the industry." Rahill asked that further hearings be held, and the trial court, taking its motion under advisement, allowed Rahill to supplement that motion with proof of what expenses, if any, Van Service was required to bear "under Illinois Commerce Commission General Order No. 24."

Thereafter, in support of the motion, Rahill filed the affidavit of its president, Moran, wherein he asserted that he had contacted a technical advisor of the ICC to obtain guidance as to the responsibilities of certificate holders for payment of expenses relating to equipment leases under ICC General Order No. 24. Based on the advisor's response, he calculated expenses allocable to Van Service, Inc., and determined that those expenses exceeded 20% of the gross revenues by $474,473.43. Attached to the affidavit were computer printouts of the revenues and expenses purportedly allocable to Van Service for the years 1980-82, which Moran averred were compiled by an accountant in preparing the combined balance sheets of Van Service and Rahill from information and documents supplied by Rahill. Each of the computer pages bears the notation "unaudited—see accountants' compilation report," but no such report is included. Also attached is a letter to Moran bearing the insignia of the ICC and signed by Clarence F. Hutches, Technical Advisor (the Hutches letter), which states in part: "This is in response to your inquiry concerning the nature of expenses which can fairly be attributable as between lessor and lessee. *** [I]t is my informal opinion that the following items would appear to be chargeable as expenses to the parties ***." The Hutches letter then enumerates the expenses purportedly allocable to the carrier and those related to the lessor's operations, but no basis is stated for the opinion. The trial court struck the affidavit and attached documents, denied Rahill's motion for modification or vacation of the partial summary judgment, and found that there was no just reason to delay enforcement or appeal. This appeal followed.

OPINION

Initially we note that, in this appeal, Rahill no longer asserts, as it did before judgment was entered, that the parties had an agreement concerning the manner in which Van Service's compensation under the equipment leases was to be used, nor does it argue, as it did in its motion to vacate or modify, that failure to allocate expenses to Van Service might jeopardize transfer of the ICC certificate should Rahill

prevail in its action for specific performance. Instead, it now maintains that ICC General Order No. 24 (Order 24), which purportedly prescribes the form for equipment leases, requires that certain expenses of operation be borne by Van Service as lessee. In effect, its position on appeal is that the trial court erred in ruling that the requirements of Order 24 are not incorporated in the equipment leases. This point was not raised in Rahill's response to Van Service's motion for summary judgment or included in its motion to vacate or modify that judgment, and ordinarily we will not consider issues which are raised for the first time on appeal (*Snow v. Dixon* (1977), 66 Ill. 2d 443, 362 N.E.2d 1052, *cert. denied sub nom. Smith v. Snow* (1977), 434 U.S. 939, 54 L. Ed. 2d 298, 98 S. Ct. 429); however, Van Service apparently concedes that reference to allocation of expenses "in accordance with the custom and usage of the industry" in Rahill's motion to vacate or modify was sufficient to raise the issue. Furthermore, it appears that Order 24 was raised at some point before the trial court, since its order allowing Rahill to supplement its motion makes reference thereto. For these reasons, we will assume for purposes of this appeal that the argument was raised in connection with Rahill's post-judgment motion.

■ Despite its apparent concession that the issue was raised in the motion to modify or vacate, Van Service nevertheless argues that the issue cannot be considered on appeal, maintaining that questions raised for the first time in a post-judgment motion are deemed waived. We disagree. While it is true that affirmative defenses, which must be raised at or before the time for answering, will not be considered on appeal when they are first raised in a post-trial motion (see *Mendelson v. Lillard* (1980), 83 Ill. App. 3d 1088, 404 N.E.2d 964), not all issues so raised are waived. To hold otherwise would render meaningless section 2—1203 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1203), which specifically allows such motions. Furthermore, it is evident from the numerous cases which have considered the trial court denials of such motions that the issue is reviewable. Here, the argument made by Rahill was not raised by way of affirmative defense; that is, it did not argue that Order 24 prevented judgment for Van Service in the amount of 20% of gross revenues. Rather, it maintains that Order 24 requires Van Service to pay certain operating expenses; that Rahill had paid those expenses; and that the trial court therefore erred in refusing to set off those expenses against the gross receipts and reduce the judgment for Van Service accordingly.

■ This is not to say that the standard of review is the same

whether the issue is raised prior to judgment or for the first time in a post-judgment motion. Had this argument been made and the supporting evidence presented prior to judgment, the question on appeal would have been whether the trial court erred as a matter of law in interpreting the equipment leases. However, when an argument is first brought to the trial court's attention by way of a post-judgment motion, the issue on appeal is whether the trial court has abused its discretion in denying that motion. (*Abbey Plumbing & Heating, Inc. v. Brown* (1977), 47 Ill. App. 3d 719, 365 N.E.2d 115.) Moreover, when the motion is supported by evidence not presented prior to judgment, it is properly denied where it appears that the evidence was in the movant's possession and could have been presented before judgment was rendered (*In re Estate of Zingraf* (1977), 51 Ill. App. 3d 145, 366 N.E.2d 464), or could have been discovered through the exercise of due diligence (*Stampley v. Collins* (1967), 90 Ill. App. 2d 11, 234 N.E.2d 356), or where the evidence is not so conclusive or decisive as to render it probable that a rehearing would result in a different judgment (*In re Marriage of Sanborn* (1979), 78 Ill. App. 3d 146, 396 N.E.2d 1192).

■ In the instant case, Rahill failed to assert that the terms of the equipment leases were supplemented by the requirements of Order 24, and there is nothing within the leases themselves which would have alerted the trial court to the possibility that Rahill was entitled to a setoff against the 20% of revenues due to Van Service. Furthermore, there was no evidence presented regarding the alleged additional terms, the expenses Van Service was required to pay, or the amount thereof. We have no reason to believe that this evidence was unknown to Rahill, either at the time judgment was rendered on October 8, 1982, or later when the judgment was reduced to a set amount on March 29, 1983. During that time, and for at least the two previous years, Rahill was bound by those leases and could be expected to know their terms. However, even if it was not in possession of this evidence, Rahill nowhere alleges that this evidence could not have been discovered through the exercise of due diligence. In fact, Rahill has not even attempted to explain, either before the trial court or on appeal, why this issue and the supporting evidence were not presented prior to judgment. For this reason alone, we believe that the trial court did not abuse its discretion in denying Rahill's motion (see *Stampley v. Collins* (1967), 90 Ill. App. 2d 11, 234 N.E.2d 356); as we noted long ago, it was never intended that post-judgment motions be used to present a case in piecemeal fashion (*Gliwa v. Washington Polish Loan & Building Association* (1941), 310 Ill. App. 465,

34 N.E.2d 735).

Moreover, we believe that denial of the motion was further justified by the nature of the evidence sought to be presented; it is not so conclusive or decisive that a different judgment would have resulted had the request for additional hearings been granted. Order 24 requires merely that leases specify the names of the parties, the duration of the leasing period, the compensation to be paid, and exclusive possession in the lessee. The only requirements with regard to expenses is that the lease shall set forth the terms of any agreement between the parties concerning them. Order 24 does not specify which expenses are to be borne by the lessor and which by the lessee. Here, the parties failed to set forth any agreement in the lease, and Rahill does not allege that any unwritten agreement existed. It could have argued that the leases were defective in that they did not comply with section e of Order 24, which states:

> "The lease shall clearly specify the responsibility of each party with respect to the cost of fuel, fuel taxes, empty mileage, permits of all types, tolls, ferries, detention and accessorial services, base plates and licenses, and any unused portions of such items."

Nevertheless, Rahill elected to treat the leases as valid and binding, despite their failure to comply with Order 24, and succeeded in having them enforced pending a final determination on the merits. It could not now argue that they were valid for purposes of allowing it to remain in business thereunder, but invalid for purposes of allowing Van Service compensation. Additionally, we note that the apparent noncompliance with the above section did not prevent the ICC from approving the leases; it seems, then, that the ICC does not require the parties to reach any kind of agreement with regard to expenses.

■ Rahill further asserts that the Hutches letter, when considered in conjunction with Order 24, establishes the expenses which Van Service is required to pay. However, we do not believe that the letter offers any aid in determining what is or is not required by Order 24. In the first place, we note that the letter makes no mention of Order 24; it is not a sworn statement, and sets forth no basis for the "informal opinion" expressed therein with regard to what expenses "can fairly be attributable as between a lessor and a lessee." Moreover, it appears that the letter as well as the affidavit to which it was attached were properly stricken by the trial court. Supreme Court Rule 191 provides that "[a]ffidavits in support of and in opposition to a motion for summary judgment *** shall be made on the personal knowledge of the affiants *** shall have attached thereto sworn or certified

copies of all papers upon which the affiant relies; \*\*\* and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." (87 Ill. 2d R. 191(a).) Since Rahill would have been required to meet these standards in opposing the motion for summary judgment had it timely presented this evidence, we see no valid reason to require less when it seeks to present the evidence through a motion to vacate or modify the order granting summary judgment. The Hutches letter, of course, does not even purport to be an affidavit; it was offered as a supporting document to Moran's affidavit, and lacked the required certification of authenticity. Moreover, the affiant, Moran, does not state that the facts contained in the Hutches letter are within his personal knowledge. To the contrary, he expressly states that he relied on that letter in reaching his conclusion that the setoff for expenses exceeded 20% of the gross receipts. Thus, it appears from the face of the affidavit that Moran could not competently testify to the facts asserted.

We conclude, then, that the trial court did not abuse its discretion in denying the motion to vacate or modify the partial summary judgment. Rahill chose to ignore this standard in its brief on appeal, arguing instead that, disregarding its failure to present the evidence prior to judgment, the trial court was required to allow it a setoff for expenses, alleging that it (1) "[h]ad no jurisdiction to refuse to apply" Order 24; and (2) was required to take judicial notice of that order and of the Hutches letter which interpreted it. We have considered each of these assertions and find them to be without merit.

In the first argument, Rahill equates Van Service's motion for partial summary judgment with an action seeking invalidation of Order 24. Such actions, it posits, must be maintained before the ICC pursuant to sections 65 and 68 of the Public Utilities Act (Ill. Rev. Stat. 1981, ch. 111⅔, pars. 69, 72), which prescribe the manner in which parties affected may seek vacation of ICC rules and regulations. Therefore, it reasons, since the trial court lacked jurisdiction to declare Order 24 invalid, it lacked jurisdiction to refuse to apply it. Besides finding this reasoning somewhat convoluted, we note that Van Service has never challenged the validity of Order 24. Its position throughout has been that Rahill was untimely in presenting evidence thereof and that, in any event, Order 24 contains no requirements concerning allocation of expenses. There is no jurisdictional question here, since no one is arguing that Order 24 is invalid; the contention is that it is simply inapplicable. Moreover, as we have stated, Order 24 contains no requirements which the court could enforce. The Hutches letter, upon which Rahill relies to establish the requirements of

Order 24, does not rise to the level of a rule or regulation which must be invalidated through application to the ICC. It is the informal and, from all appearances, personal opinion of an ICC employee, which is not even entitled to a "presumption of validity," as Rahill asserts.

■ Finally, we find no merit in the argument of Rahill that the trial court was required to take judicial notice of Order 24 and of the Hutches letter, pursuant to section 8—1001 of the Code of Civil Procedure. (Ill. Rev. Stat. 1981, ch. 110, par. 8—1001.) Initially, we note that there is nothing in that section requiring that ICC rules be judicially noted, and while the trial court and this court may take judicial notice of the orders of administrative agencies (see *Nordine v. Illinois Power Co.* (1965), 32 Ill. 2d 421, 206 N.E.2d 709; *Department of Public Welfare v. Bohleber* (1961), 21 Ill. 2d 587, 173 N.E.2d 457), we find here that had the trial court judicially noted Order 24, it would not have advanced Rahill's cause, since it contains no requirements concerning the allocation of expenses. The only evidence of expenses purportedly allocable to Van Service was the Hutches letter, and, for the reasons already discussed at length in this opinion, it was not even competent evidence, let alone the type of evidence of which a court must take judicial notice.

For the foregoing reasons, the order of the trial court denying the motion to vacate or modify the partial summary judgment is affirmed.

Affirmed.

LORENZ and O'CONNOR, JJ., concur.