La SALLE NATIONAL BANK *et al.*, Plaintiffs-Appellants, v. 850 DE WITT CONDOMINIUM ASSOCIATION, Defendant-Appellee.

First District (6th Division)   No. 1—90—0363

Opinion filed March 22, 1991.

Young, Hauslinger & Rosen, Ltd., of Chicago (Alan Rosen, Norman T. Finkel, and Marcia Topper Wolf, of counsel), for appellants.

Ash, Anos, Freedman & Logan, of Chicago (Bruce T. Logan, of counsel), for appellee.

PRESIDING JUSTICE RAKOWSKI delivered the opinion of the court:

Owners of a garage which adjoined a condominium building filed suit against the condominium association seeking injunctive and declaratory relief as well as damages resulting from the association's possession and use of certain portions of the garage property. The as-

sociation counterclaimed, requesting that its declaration of condominium be reformed to include the disputed property. On cross-motions for summary judgment, the trial court ordered reformation of the declaration of condominium and the 1984 deed which conveyed the garage property by adding the disputed property to the declaration of condominium and deleting it from the 1984 deed.

Prior to September 1978, the property located at 850 De Witt Place in Chicago was a 22-story rental building with an attached three-story garage. Title to the property was held in trust by La Salle National Bank pursuant to a trust agreement dated October 3, 1953. In September 1978, 850 De Witt Associates, the beneficial owner of the property, decided to divide the residential and garage property and sell the residential property as condominium units. The declaration of condominium ownership (Declaration) was recorded at that time. Incorporated in the Declaration was a plat of survey prepared by Nicholas Raimondi of the National Survey Service. Paul Reynolds, the president of Mid-Continental Realty, which was the general partner of 850 De Witt Associates, had arranged for the survey to provide separate legal descriptions for the residential tower and garage property. In his deposition testimony, Raimondi stated that he was instructed to divide the existing property into two separate entities according to "the existing walls defining the two different structures." The three areas which are at issue in this appeal were included in the legal description of the garage and excluded from the legal description of the residential tower. These areas are physically under the roof of the garage and are being used by the condominium owners as a storage locker room, bicycle storage room and to house a sump pump, fire pump and emergency fuel tank. The areas have never been used for any purpose related to the operation of the garage.

In December 1979, the beneficial interest in the garage property was conveyed to Robert Matanky, a partner of the 850 De Witt Venture. Matanky subsequently leased the property to Ganser-Oguss Parking, Inc. (Ganser-Oguss), to operate the garage from January 1980 until June 1984. At that time, Matanky assigned its beneficial interest in the garage property to Ganser-Oguss, which then assigned its interest to Gerald Oguss.

When Oguss became the beneficial owner of the garage property, he toured the area with Austin Stoll, the building manager. Oguss stated in his deposition that it was during this tour that he first became aware of the condominium association's (Association's) "unauthorized use" of the three disputed areas. Oguss then informed the Association and its attorneys that the areas being used by the Associ-

ation were within the property lines of the garage and were being used without his permission. In June 1984, plaintiffs submitted a request to the Association and its attorneys for payment for or abandonment of the disputed areas. Plaintiffs' request was denied, and they subsequently filed a complaint requesting the declaration of the court that the title to the garage property be found clear of any claim by the Association, that the Association be declared a trespasser and ordered to relinquish possession of the three areas and for the recovery of damages for the Association's unauthorized use of the property plus any costs incurred by the plaintiffs for the removal of the Association's fixtures.

The Association filed a countercomplaint admitting that the land trust was the owner of the three areas but alleging that the original land survey which divided the residential tower from the garage property was incorrect, and that these areas should have been included as common elements of the Association. Thus, the Association sought reformation of the condominium declaration to include these areas in the legal description of the condominium property. In its answer to plaintiff's amended complaint, the Association asserted the affirmative defenses of easement by implication, necessity and prescription.

The parties filed cross-motions for summary judgment. The trial court denied plaintiffs' motion and granted the Association's motion on its first amended countercomplaint for reformation. The court then entered an order that the deed conveying the garage property to the land trust in 1984 be reformed by deleting the three disputed areas from the legal description of the property and also ordered the reformation of the condominium declaration to include the three areas which had been deleted. Thereafter, plaintiffs filed a motion for reconsideration which was denied. Plaintiffs appeal from the trial court's order and from the denial of their motion for reconsideration.

Plaintiffs' position on appeal is that on these facts reformation is an improper remedy as a matter of law and, even if proper, material fact questions existed which precluded summary judgment. While we agree, for reasons set forth later in this opinion, that this case should not have been disposed of on summary judgment, we do not agree that reformation should have been denied as a matter of law.

■ In order for a written instrument to be reformed, the party seeking reformation must prove that there has been a meeting of the minds which resulted in an actual agreement between the parties, and that when the agreement was reduced to writing and executed, an agreed-upon provision was omitted or one not agreed upon was inserted as a result of the mutual mistake of the parties. (*La Salle Na-*

*tional Bank v. Kissane* (1987), 163 Ill. App. 3d 534, 541, 516 N.E.2d 790; *Texas Eastern Transmission Corp. v. McCrate* (1979), 76 Ill. App. 3d 828, 831, 395 N.E.2d 624.) The party seeking reformation must prove these elements by clear and convincing evidence. *Briarcliffe Lakeside Townhouse Owners Association v. City of Wheaton* (1988), 170 Ill. App. 3d 244, 251, 524 N.E.2d 230.

In support of their position, plaintiffs' first focus on the 1978 declaration and survey. They argue that reformation was not proper because the survey was a unilateral document and because there was no agreement between the parties which was at variance with the declaration. With respect to the 1984 deed, plaintiffs claim that because Matanky sold all he had and Ganser-Oguss purchased all that Matanky had to sell, no mutual mistake existed and, therefore, reformation was improper. Without inquiry as to the merits of these arguments, they must fail because they miss the issue. This is so because neither the 1978 declaration nor the 1984 deed was the reason for the reformation order. Rather, they are natural results which flow from the reformation of the 1979 contract of sale from the Reynolds group to the Matanky group.

■ The written instrument in which the mutual mistake would have initially occurred in this case would have been the 1979 deed between Reynolds and Matanky. The trial court ordered the reformation of the 1984 deed and condominium declaration to conform the current documents to what it found to be the original intent of Reynolds and Matanky. Furthermore, although we conclude that summary judgment was improper in this case, we do not find any merit in plaintiffs' arguments regarding the 1979 deed. Plaintiffs argue that Matanky intended to purchase the garage property with the disputed areas because he had the documents containing the legal description of the property at the time of the sale. Plaintiffs then claim that there was no meeting of the minds between Reynolds and Matanky because Matanky intended to purchase the disputed areas, and Reynolds stated in his deposition testimony that he only intended to sell the property used for the operation of the parking garage. Plaintiffs further argue that there was no mutual agreement because there were no negotiations between Matanky and Reynolds. However, plaintiffs present no evidence to support this conclusion other than the fact that the property was purchased at an auction. Plaintiffs' final argument is that Reynolds intended to sell the disputed areas as part of the garage property because he did not instruct the surveyor to include them as part of the condominium property. However, plaintiffs then claim that Reynolds intended to include the disputed areas as part of the garage

property because he did not know of their existence. We find plaintiffs' arguments conclusory and without supporting evidence. As a result of the foregoing, we do not agree that reformation was improper as a matter of law.

As previously stated, the written instrument to be considered is the original deed in which the developer, Paul Reynolds, as representative of 850 De Witt Associates, first conveyed the garage property to Robert Matanky as representative of 850 De Witt Venture. The relevant questions then are whether, at the time the deed was executed, the parties to this transaction intended that the garage property only include the area used for the operation of the garage, and whether the inclusion of the three disputed areas in the 1979 deed was a mutual mistake.

There appears to be ample evidence from Reynolds' deposition testimony that when he sold Matanky the garage property, he intended to sell only those areas used for the operation of the parking garage business. Reynolds testified at his evidence deposition that while acting as president and chairman of the board of Mid-Continental Realty, a general partner of 850 De Witt Associates, he made the decision to separate the garage property from the condominiums. Reynolds stated that he intended to include in the garage area anything necessary to operate the garage, such as the parking spaces and access ramps. Reynolds also stated that he intended that the common elements of the condominium include those areas that were being used by the tenants when the residential property was rented. When specifically questioned about each of the disputed areas, Reynolds responded in all three instances that he did not consider them as part of the garage property.

The evidence regarding Matanky's intention at the time of the 1979 conveyance, however, is not as clear. At one point in his deposition Matanky was questioned regarding the location of the bicycle room. When asked if it was located in his garage area, Matanky replied "not to the best of my knowledge." Matanky was then asked if he could describe where it was located, and he stated:

> "Based upon the documents I've been served with, it was noted to be located in the northwest corner of the garage area. I was not aware of any possible infringement upon the garage space at the time."

Although Matanky stated that he knew of the existence of the bicycle room when he owned the garage property, it is not clear from his testimony whether he had knowledge of the other two areas or their lo-

cation. When asked what he understood he was purchasing, he stated that he was purchasing the garage which was the property he saw.

■■■ Summary judgment should only be granted where the pleadings, depositions, admissions or affidavits show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005; *Schwartz v. Great Central Insurance Co.* (1989), 188 Ill. App. 3d 264, 270, 544 N.E.2d 131.) Counterplaintiffs' standard of proof is stringent. In order to prevail, their evidence must be sufficient to meet the "clear and convincing" standard, which is "that quantum of proof which leaves no reasonable doubt in the mind of the trier of fact of the truth of the fact in issue." (See *In re Estate of Weaver* (1966), 75 Ill. App. 2d 227, 229, 220 N.E.2d 321.) Furthermore, the issue of whether a party seeking reformation has presented sufficient evidence to satisfy the higher burden of proof is primarily a question of fact. (*Great American Federal Savings & Loan Association v. Grivas* (1985), 137 Ill. App. 3d 267, 274, 484 N.E.2d 429.) Although there is evidence from Matanky's testimony that he only intended to purchase property connected with the operation of the parking facility, we judge it insufficient to support summary judgment. In this case, Matanky was never specifically questioned as to whether, at the time of purchase, he intended that the garage property was inclusive or exclusive of the disputed areas. Because we conclude that Matanky's intent at the time of the execution of the 1979 deed is a genuine issue of material fact, disposition of this matter by summary judgment was improper.

■■ ■ Finally, we address whether Oguss and/or Ganser-Oguss were *bona fide* purchasers for value and without notice of third-party claims when they became beneficial owners of the garage property. A *bona fide* purchaser of an interest in property takes that interest free and clear from all claims except those of which he has notice. (*Carlyle v. Jaskiewicz* (1984), 124 Ill. App. 3d 487, 492, 464 N.E.2d 751.) Understandably, both parties have taken opposite sides of this issue and now argue their positions as a matter of law. We agree with neither. While we find no evidence in the record that Oguss purchased the garage property for value, Oguss was a principal member of Ganser-Oguss, which was also a third party to the 1979 transaction. Therefore, even if Oguss is not a *bona fide* purchaser for value, a determination must be made as to whether Ganser-Oguss was a *bona fide* purchaser. At issue in determining Ganser-Oguss' status as a *bona fide* purchaser is whether the corporation had notice of the Association's claims to the disputed areas. In addition:

"Such notice may be actual or constructive and contemplates the existence of circumstances or facts either known to a prospective purchaser or of which he is chargeable with knowledge which imposes upon such purchaser the duty of inquiry." (*Burnex Oil Co. v. Floyd* (1969), 106 Ill. App. 2d 16, 21, 245 N.E.2d 539.) With respect to the 1984 transaction, we have examined the testimony of both Matanky and Oguss and conclude that the *bona fide* purchaser issue is also a fact question and not subject to summary judgment. See *Carlyle*, 124 Ill. App. 3d at 493.

Accordingly, the denial of plaintiffs' motion for summary judgment is affirmed, the granting of defendant's motion for summary judgment is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

McNAMARA and LaPORTA, JJ., concur.