PATRICK MEDIA GROUP, INC., Successor in Interest to Foster and Kleiser, a Division of Metromedia, Inc., Plaintiff-Appellee, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

First District (1st Division)   No. 1—92—1759

Opinion filed September 20, 1993.

Michael I. Lieberman, of Chicago Transit Authority, of Chicago, for appellant Chicago Transit Authority.

Rock, Fusco, Reynolds & Garvey, Ltd., of Chicago (Kevin W. Horan and Mara S. Georges, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

In this appeal, we are asked to review a decision of the circuit court which reformed a contract entered into by the parties. We agree with the circuit court and affirm.

In August 1969, plaintiff, Patrick Media Group, Inc., "successor in interest" to Foster & Kleiser, a division of Metromedia, Inc., con-

tracted with defendant, the Chicago Transit Authority (CTA), for the sole and exclusive rights to place and handle advertising upon the CTA's elevated structures. The 1969 agreement later was supplemented by a 1971 agreement. That agreement ran from January 1, 1971, until December 31, 1980. The 1971 agreement also provided for plaintiff's payment to the CTA of 30% of plaintiff's net collections to and including December 31, 1975, and of 35% of the net collections on and after January 1, 1976.

After the expiration of the agreement, the parties renegotiated the financial terms of the contract. On March 2, 1981, the parties reached an agreement to extend plaintiff's rights and privileges to place and handle advertising by means of outdoor displays on the CTA's elevated structures for a term running from January 1, 1981, until December 31, 1985. This new agreement increased the CTA's allotment of plaintiff's net collection to 37½%.

In late 1982, plaintiff offered to spend approximately $400,000 to construct 10 sign structures on CTA platforms located throughout the Chicago Loop. However, before embarking on such a large financial undertaking, plaintiff sought assurance from the CTA that it would retain its rights and privileges for a time period long enough to enable it to amortize its investment and to enjoy some profit. To that end, the parties renegotiated their agreement, and on February 3, 1983, the parties agreed to amend the 1981 agreement. This amendment extended the 1981 agreement to and including December 31, 1990. The 1983 amendment contained the following five-year extension clause:

"This Agreement shall be extended for a period of five (5) additional years at expiration providing:

(i) the Contractor is not then in default of any agreement terms;

(ii) Contractor has given written notice not earlier than January 1, 1990, nor later than April 1, 1990, of its desire to extend this agreement;

(iii) Authority and Contractor have mutually agreed to the extension of this Agreement and modifications and/or additions thereto prior to August 1, 1990."

The dispute giving rise to this lawsuit can be stated simply: Plaintiff wants to extend the contract for another five years to 1995, and the CTA does not. On January 12, 1990, plaintiff wrote to the CTA, notifying it of its desire to extend the contract for five years in accordance with the 1983 amendment. On July 31, 1990, the CTA notified plaintiff that pursuant to subparagraph (iii) of the extension

clause, the CTA would not extend the contract. Therefore, the contract was to expire on December 31, 1990.

On September 18, 1990, plaintiff joined the CTA as a defendant to its pending lawsuit against the City of Chicago[1] and amended its complaint against the city, adding three additional counts against the CTA. Count V sought a declaratory judgment that the CTA breached the contract and that plaintiff was entitled to a five-year extension and that the CTA should be enjoined from opening the contract to public bid. In count VI, plaintiff sought monetary damages for the CTA's alleged breach of its common law duty to bargain in good faith.

On January 30, 1991, plaintiff amended its complaint by adding a count seeking reformation of the 1983 amendment. Plaintiff alleged that the parties agreed to an automatic five-year extension following the December 31, 1990, expiration date *provided* that (i) plaintiff was not in default, (ii) plaintiff had given timely notice of its desire to extend, and (iii) the parties mutually agreed to modifications and/or additions to the agreement. Plaintiff alleged that subparagraph (iii) mistakenly was inserted into the parties' written agreement.

The CTA eventually filed a motion for summary judgment as to counts V and VI. Plaintiff filed a cross-motion for summary judgment as to count VII. In support of its cross-motion, plaintiff attached several affidavits of representatives of both parties who were involved in the negotiation of the 1983 agreement. All stated that the parties, in the 1983 amendment, intended for the automatic extension of the contract until 1995. In response, the CTA argued that the intent of the negotiators could not bind the CTA. The CTA also argued that plaintiff had failed to meet its burden of proving that a mutual mistake existed which entitled plaintiff to reformation. In addition, the CTA, for the first time, raised the defense of *laches*, arguing that plaintiff waited 8½ years to seek reformation. Both parties apparently agreed that subsections (i) and (ii) were met.

Following arguments on the cross-motions, the circuit court granted plaintiff's motion, denied the CTA's motion, and reformed the 1983 amendment to the 1981 agreement to reflect the automatic extension agreed to and intended by the parties. The order also contained Rule 304(a) language stating that there was no reason to delay enforcement or appeal of the order. 134 Ill. 2d R. 304(a).

---

[1]In that action, plaintiff sought to have 10 permits, issued by the city and later revoked, declared valid.

The CTA thereafter filed a motion to reconsider and vacate the order of summary judgment, arguing that "newly discovered evidence" warranted vacatur of the previous order. The circuit court denied the motion on April 20, 1992. The CTA filed a notice of appeal on May 20, 1992.

The CTA contends that the circuit court erroneously granted summary judgment by ruling that the 1981 agreement should be reformed.

■■ A party seeking the reformation of a written instrument must prove that there has been a meeting of the minds which resulted in an actual agreement between the parties, but that when the agreement was reduced to writing and executed, an agreed-upon provision was omitted or one not agreed upon was inserted as a result of the mutual mistake of the parties. (*Schmitt v. Heinz* (1955), 5 Ill. 2d 372, 125 N.E.2d 457; *Upper Level, Inc. v. Provident Venture Corp.* (1991), 209 Ill. App. 3d 964, 568 N.E.2d 531; *La Salle National Bank v. Kissane* (1987), 163 Ill. App. 3d 534, 516 N.E.2d 790.) This must be established by clear and convincing evidence. (*Novak v. Smith* (1990), 197 Ill. App. 3d 390, 554 N.E.2d 652.) Generally, the question of whether a plaintiff has presented sufficient evidence to meet this burden and to overcome the presumption that the written instrument is expressive of the parties' true intent is one of fact. *La Salle National Bank v. 850 De Witt Condominium Association* (1991), 211 Ill. App. 3d 712, 570 N.E.2d 606; *Novak*, 197 Ill. App. 3d at 398.

The CTA maintains that the affidavits relied upon by the circuit court fail to prove the elements of reformation by a clear and convincing standard. Plaintiff attached five affidavits to its cross-motion for summary judgment. In his affidavit, Ronald F. Bartkowicz swore that he was the first assistant general attorney for the CTA at the time of the negotiations in 1983. As such, he was involved in the negotiations between the parties which led to the execution of the amendment in question. Specifically, Bartkowicz stated that it was his "recollection and understanding that Metromedia [now plaintiff] and the Authority intended and agreed to a Contract termination date of 1995 as long as Metromedia was not in default and had given timely notice, with *** if necessary an adjustment to the percentage of the net collection due the Authority." Richard M. Hudak, plaintiff's vice-president and assistant regional manager during the negotiations, also provided an affidavit. In it, he swore that both parties agreed and intended to extend the contract for a five-year period after December 31, 1990, "so long as [plaintiff] was not in default and as long as [plaintiff] had promptly notified the CTA of its desire to extend the Agreement."

6

Moreover, the amendment provided the parties with the opportunity "for any additions or modifications to the contract," but was not to contain any unilateral right to terminate. The affidavit of Merritt R. Kotin, the CTA's director of real estate during the negotiations, also was attached to plaintiff's cross-motion. Kotin swore that the parties agreed to extend the initial period of the contract to December 31, 1990, "with an option for an automatic extension of the contract for a period of five years *** provided that Metromedia [now plaintiff] was not in default and provided that Metromedia gave timely notice to extend to the CTA." According to Kotin, the provision was to provide that "[o]nce Metromedia exercised its option," the parties were to negotiate a new net collection percentage "if necessary." The affidavit of James P. Gallagher, a member of the CTA's board of directors at the time in question, also was submitted for the court's consideration. Gallagher swore that the 1983 amendment was presented to the full board, who intended to provide an automatic five-year extension to December 31, 1995. Michael Cardilli, the CTA's chairman at the time in question, also provided an affidavit. In it, he swore that the parties agreed to an automatic five-year extension after 1990 as long as plaintiff was not in default, had given the CTA adequate notice of its intent to extend, and that the CTA agreed to any price modifications.

In view of these statements, none of which were contradicted by the CTA, the CTA's argument is meritless. For example, the CTA asserts that none of the affiants detailed how long the extension period was to run. That is simply not true; each affidavit leaves no doubt but that the parties intended a five-year extension after December 31, 1990. Even more damaging to the CTA is the complete lack of any contradictory allegations or affidavits on this point. No evidence was presented which would indicate that the CTA intended to insert a unilateral right to cancel the contract provision into the amendment.

Summary judgment is properly granted where the pleadings, depositions, admissions, or affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005; *La Salle National Bank v. 850 De Witt Condominium Association*, 211 Ill. App. 3d at 718.) In order to prevail, the movant's evidence must be sufficient to meet the clear and convincing standard, which is "that quantum of proof which leaves no reasonable doubt in the mind of the trier of fact of the truth of the fact in issue." (*La Salle National Bank v. 850 De Witt Condominium Association*, 211 Ill. App. 3d at 718.) Where a party moving for summary judgment files supporting affidavits containing well-pleaded facts and the party oppos-

ing the motion files no counteraffidavits, the material facts set forth in the movant's affidavits stand as admitted. *Wooding v. L.&J. Press Corp.* (1981), 99 Ill. App. 3d 382, 425 N.E.2d 1055.

■ The CTA here insists that its board may not have agreed to an automatic extension of the contract. However, the CTA failed to factually support this allegation. As a result, the facts alleged in plaintiff's affidavits—which, we note, contain the sworn statement of a board member contradicting this assertion—must be taken as true. Therefore, because the parties' intent at the time of the execution of the 1983 amendment was not a genuine issue of material fact, the granting of summary judgment was appropriate.

The CTA next contends that the doctrine of *laches* precluded plaintiff from achieving reformation. Plaintiff insists that the issue has been waived because the CTA failed to properly assert the doctrine in the circuit court.

*Laches* is an equitable principle which bars an action where, because of delay in bringing suit, a party has been misled or prejudiced or has taken a course of action different from that which it might have otherwise taken absent the delay. (*Schons v. Monarch Insurance Co.* (1991), 214 Ill. App. 3d 601, 574 N.E.2d 83, *appeal denied* (1991), 141 Ill. 2d 560, 580 N.E.2d 134.) In order to demonstrate that the delay induced the party to adversely change its position, prejudice or hardship, rather than the mere passage of time, must be shown. (*Schons*, 214 Ill. App. 3d at 609.) To that end, it is essential that the party asserting the defense plead and prove not only that a considerable period of time has elapsed and that prejudice has resulted, but also that the opposing party had prior knowledge of the facts giving rise to the claim. *Schons*, 214 Ill. App. 3d at 609.

■ In the present case, the CTA has neither pled nor proven *laches*. It first raised the doctrine in its response to plaintiff's cross-motion. However, the CTA merely cited the length of plaintiff's alleged delay, 8½ years, in seeking to establish the defense of *laches*. This, standing alone, does not warrant the application of the doctrine. Moreover, the CTA's claim of an 8½-year delay is disingenuous, based as it is on the period of time running from the date the parties agreed to amend the 1981 agreement until their dispute in the summer of 1990. The CTA ignores that plaintiff first learned of the CTA's decision not to extend the contract on July 31, 1990. Plaintiff filed the present suit in September 1990 and amended its complaint to include the reformation count in issue here in January 1991. Thus, the CTA's calculation of an eight-year delay is misleading. Additionally, the CTA has not alleged prejudice or hardship from this "delay," nor has it

produced any evidence tending to show that it was induced to adversely change its position as is required for the *laches* defense.

■■ The CTA next argues that reformation was improper because plaintiff had an adequate remedy at law. The circuit court found specifically that money damages were not available because the 10 Loop signs at issue had remained in place throughout the litigation. The trial judge also found that the contract on its face did not automatically extend the contract for a five-year period. If the contract was allowed to stand as written, plaintiff would be required to take down its signs. As a result, a breach of contract action, with its attendant monetary damages, would not lie. Under these facts, plaintiff did not have an adequate remedy at law, and thus, reformation was an appropriate remedy.

■■ Finally, the CTA maintains that the circuit court improperly denied its motion for reconsideration based on newly discovered evidence. Rehearing or reconsideration is not warranted unless the newly discovered evidence is of such conclusive or decisive character as to make it probable that a different judgment would be reached. (*In re Marriage of Sanborn* (1979), 78 Ill. App. 3d 146, 396 N.E.2d 1192.) Moreover, the party seeking the rehearing must establish due diligence and demonstrate that real justice has been denied. (*Sanborn,* 78 Ill. App. 3d 146, 396 N.E.2d 1192.) The decision to grant or deny such a motion rests within the discretion of the circuit court and will not be disturbed on appeal absent abuse. *Cohn v. Checker Motors Corp.* (1992), 233 Ill. App. 3d 839, 599 N.E.2d 1112.

In its motion for reconsideration, the CTA sought to present new evidence rebutting the circuit court's finding that the parties intended to include an automatic contract provision to 1995 in the 1983 amendment. According to the CTA, the new evidence

> "was inadvertently discovered when below-signed counsel had a chance meeting with the former secretary to the CTA board and this case came up. Before that meeting below-signed counsel had investigated the case through the current secretary of the CTA Board who apparently was not familiar with the records maintained by his office."

The motion then went on to "renew[ ] the facts and arguments in its Motion for Summary Judgment and its Response to Plaintiff's Motion for Summary Judgment." The CTA had argued, unsuccessfully, that a majority vote of the Chicago transit board was necessary for the amendment's approval and that the intent of the negotiators, working for the CTA, was irrelevant. Thus, the new evidence was presented to establish the CTA's intent. The first piece of evidence was a "special

recommendation for outdoor advertising structures—Foster & Kleiser." This document is dated January 26, 1983, and states that the CTA's purchasing agent "recommended" that the contract with plaintiff be amended by changing its expiration date to December 31, 1990. The second piece of evidence is an excerpt from the minutes of a meeting of the CTA on February 2, 1983. In that meeting, the board voted to extend the contract until December 31, 1990. It also voted to adopt any ordinance based on the recommendation of the law department.

The foregoing evidence makes no reference to the possibility of an automatic contract extension of five years after the expiration of the initial term. Moreover, it tends to corroborate the statements in the affidavits that the parties intended to extend the contract until December 1990. Apparently, the board relied upon the law department to guide it in this area. This is evinced by the reference at the board meeting to "adoption [of the amendment] based upon the recommendation of the law department." According to Bartkowicz, the deputy head of the law department, it was the CTA's intent to extend the contract until 1990 and to provide plaintiff with an automatic extension if two conditions were met on plaintiff's part and if the CTA was afforded the opportunity to modify its percentage of plaintiff's net collections. Accordingly, the newly discovered evidence does not appear to change the outcome. More importantly, the CTA cannot establish due diligence because it appears from the nature of the new evidence that it was in the CTA's possession and could have been presented before judgment was entered. (See *e.g., Cohn*, 233 Ill. App. 3d at 843; *Rahill Corp. v. Urbanski* (1984), 123 Ill. App. 3d 769, 777, 463 N.E.2d 765.) For that reason, the circuit court did not abuse its discretion in denying the CTA's motion.

Affirmed.

CAMPBELL and BUCKLEY, JJ., concur.