THE CITY OF MARSEILLES, Plaintiff-Appellee, v. ROSS BLAKE RADKE, Defendant-Appellant (Union Bank *et al.*, Defendants).

Third District    No. 3—98—0518

Opinion filed September 30, 1999.

Eric B. Deobler (argued), of White, Marsh, Anderson, Vickers & Deobler, of Ottawa, for appellant.

Keith R. Leigh (argued), of Pool, Leigh & Fabricius, of Ottawa, for appellee.

JUSTICE HOMER delivered the opinion of the court:

On remand from this court, the trial court determined that a condemned easement fell within the boundaries of a tax increment financing district created by the City of Marseilles. Thus, the trial court reconfirmed that it had subject-matter jurisdiction to approve a consent judgment that resolved the parties' dispute over the easement. After our careful review, we affirm.

## FACTS

The City of Marseilles (city) adopted an ordinance creating a real property tax increment financing district (TIF district) and an attendant redevelopment plan pursuant to the Tax Increment Allocation Redevelopment Act (Act) (65 ILCS 5/11—74.4—1 et seq. (West 1994)). Through powers of eminent domain conferred by the Act, the city brought a condemnation suit against Radke to acquire an easement across a portion of his property.

The property in question is a nine-acre rectangular parcel located in an industrial area and is situated between the CSX railroad tracks to the north and the Illinois and Michigan Canal (I&M Canal) property to the south. The city wanted to construct a railroad spur using a 70-foot-wide strip which curved across the eastern portion of the parcel.

After Radke filed a motion to traverse and dismiss the condemnation action, the parties agreed to a consent judgment that required Radke to convey the subject easement and another railroad easement to the city. In return, the city paid Radke $30,000 and agreed to make a good-faith effort to assist Radke in obtaining better access to his property.

Thereafter, Radke filed a motion to vacate the consent judgment, maintaining, *inter alia*, that the city lacked authority to acquire the easement by condemnation because he had since discovered that the easement was not located within the legal description of TIF district boundaries. Radke concluded, therefore, that the trial court lacked subject-matter jurisdiction to approve the consent judgment.

After the trial court denied Radke's motion, he appealed to this court. On review, we determined:

"Under the TIF Act, the City can only bring an eminent domain action against property located within the TIF district. [65 ILCS 5/11—74.4—4(c) (West 1994)]. Therefore, the location of the condemned easement within the TIF district was a statutory prerequisite to the trial court's exercise of subject-matter jurisdiction. If the condemned easement was outside the TIF district, the trial court had no jurisdiction to enter any order, even a consent judgment, and it should have dismissed the complaint. As subject-matter jurisdiction can be raised at any time in the proceeding, the trial court should have conducted an evidentiary hearing on this issue, even in response to Radke's motion to vacate the consent judgment." *City of Marseilles v. Radke*, 287 Ill. App. 3d 757, 762-63, 679 N.E.2d 125, 129 (1997).

Because there was no evidence in the record upon which the trial court could have based its determination that the condemned easement was within the TIF district boundaries, we remanded the cause for the purpose of conducting an evidentiary hearing so the trial court could properly make that determination.

At the hearing, both parties presented the testimony of experts on how to interpret the boundaries of the TIF district and the condemned easement. Their testimony revealed the crux of the problem in this case—the use of the phrases "I&M Canal" and "I&M Canal Reserve" as reference points in the legal descriptions.

When the city engineer, Michael Etscheid, drafted the legal description of the condemned easement, he referred to the north line of the "I&M Canal Reserve" as a point of reference. The "reserve" is a 90-foot area along either side of the actual canal that would allow for canal expansion. However, when Etscheid previously drafted the legal description of the TIF district and the associated map, he referred to the north line of the "I&M Canal," intending it to be the same point of reference.

The use of these two phrases created a conflict regarding the location of an arc marking the western boundary of the TIF district as it passes through Radke's property. The placement of the arc determines whether the condemned easement on Radke's property is located within the TIF district.

Etscheid testified that the arc establishing the western boundary of the TIF district and the arc creating the western boundary of the condemned easement are actually the same line, even though the respective legal descriptions identify the north line of the canal property as a point of reference using different terminology. Etscheid indicated that it would be difficult to use the canal itself as a reference point because its boundaries are irregular and are not "monumented," and since it is now dry, it has no water line for a frame of reference. In his professional opinion, the two phrases are interchangeable and both refer to an area that includes the canal and its reserve.

J. William Shafer, the city's expert witness, is a civil engineer and land surveyor. After reviewing numerous documents and calculating and mapping out the boundaries, it became clear to him that the term "reserve" should have been included in the reference to the I&M Canal in the legal description of the TIF district. Shafer stated that the omission was a scrivener's error. When such errors are found, the procedure in his profession is to determine the intent of the document, utilizing all available evidence.

Shafer stated that the documents show that the arcs creating the western boundaries of the condemned easement and the TIF district as they crossed the Radke property were clearly intended to be the same line. Based upon his investigation, he opined that the condemned easement is, in fact, within the TIF district.

Walt Vegrzyn, Radke's expert witness, is a surveyor. Using surveying standards for the interpretation of deeds, Vegrzyn relied solely upon the legal descriptions of the easement and the TIF district in rendering his opinion. He had not been provided with or considered any other documentation, including the city ordinances and the accompanying map. He testified that his understanding of the law was that maps are not to be included when describing TIF districts and that legal descriptions alone are determinative.

Vegrzyn testified that using the northern border of the I&M Canal itself as the reference point, the arc that establishes the western border of the TIF district does not "close mathematically," but the description is sufficient to accomplish closure after some modification. Under his interpretation, only a minute portion of the condemned easement falls within the TIF district. He stated that he must interpret the language of the legal description as written, so it would be improper to add the word "reserve."

On cross-examination, Vegrzyn was given copies of the city ordinances, including the map. He testified that if the author intended the reference to the I&M Canal to include the canal and its reserves, then there would be no conflict between the legal description and the map as they relate to the Radke property. After reviewing these documents, he testified that it was clear that the author used the terms interchangeably and that the reserve areas were to be included. He stated, however, that the author's intent was not "applicable" here and that it was only proper to look to the legal descriptions.

At the close of evidence, the trial court deemed Shafer's testimony to be "forthright" and "persuasive." Accordingly, the court found that the western arc of the TIF district boundary was based upon the north line of the I&M Canal reserve property, not the canal itself, as a reference point. Finding, therefore, that the evidence showed that the condemned easement was within the TIF district boundaries, the trial court determined that it had subject-matter jurisdiction over the condemnation action. Radke appeals.

## ANALYSIS

■ A trial court's factual determinations will not be overturned on appeal unless they are contrary to the manifest weight of the evidence. See *Henry County Board v. Village of Orion*, 278 Ill. App. 3d 1058, 1066-68, 663 N.E.2d 1076, 1083-84 (1996).

Radke contends that the use of the phrase "I&M Canal" instead of "I&M Canal Reserve" in the legal description of the TIF district is fatal to the city's position that the condemned easement falls within the TIF district boundaries. He maintains that the legal description, standing alone, is determinative on this issue and that no other documentation should have been considered.

For support, he explains that prior to creating the TIF district and using its powers of eminent domain, the city had to comply with the notice requirements of section 11—74.4—6 of the Act (65 ILCS 5/11—74.4—6 (West 1994)). Radke asserts that the legislative intent of this provision is that the legal description in the notice of public hearing should dictate the TIF district boundaries. He maintains that there is

no requirement that a map or drawing be included and that such documents should not be considered part of the legal description. Consequently, Radke argues that Vegrzyn's strict use of the legal descriptions and conclusions drawn therefrom should control. He dismisses Shafer's analysis as overreaching because he relied upon outside materials to come to his conclusions.

■ Section 11—74.4—4(a) of the Act expressly authorizes municipalities to designate TIF districts and redevelopment project areas by *ordinance.* 65 ILCS 5/11—74.4—4(a) (West 1994). The specific manner in which the area is to be described in the ordinance is not prescribed by the Act. The instant TIF district is described in two exhibits attached to the ordinances creating it: (1) the written legal description of the TIF district and (2) a map of the area that delineates the TIF district. Contrary to Radke's assertion, we find nothing in the Act to preclude the city from using a map in conjunction with a legal description in designating a TIF district. Therefore, it was not improper for the map to be considered along with the legal descriptions in this case.

■ The trial judge's resolution of this matter required him to weigh the conflicting testimony of expert witnesses. The trial judge is in the best position to resolve any such conflicts, observe the witnesses' demeanor and determine their credibility. *Flynn v. Cohn*, 154 Ill. 2d 160, 169, 607 N.E.2d 1236, 1240 (1992). As the trier of fact, the judge may accept one expert opinion over another. *Mobil Oil Corp. v. City of Rolling Meadows*, 214 Ill. App. 3d 718, 726, 574 N.E.2d 41, 47 (1991).

■ After our careful review, we determine that the trial court's decision to accept Shafer's testimony and find that the use of the phrase "I&M Canal" in the description of the TIF district was intended to include the area known as the I&M Canal Reserve was not against the manifest weight of the evidence.

Shafer's analysis coincides with the accepted view that when interpreting legal descriptions of land, Illinois courts have consistently applied a more relaxed standard of interpretation to descriptions of municipal boundaries than to those in deeds or contracts. See *People ex rel. Village of Worth v. Ihde*, 23 Ill. 2d 63, 66, 177 N.E.2d 313, 315 (1961). Shafer considered the omission of the term "reserve" in the legal description of the TIF district a scrivener's error. He testified that unless the north line of the I&M Canal Reserve was used as the point of reference, the arc creating the western boundary of the TIF district would not close mathematically. By correcting the error, the legal description becomes consistent with the accompanying map. Even Radke's own expert, Vegrzyn, agreed with this assertion. After our careful review, we believe that the trial court's determination that Shafer's opinion was well founded is consistent with the evidence.

Furthermore, the map clearly shows that the north line of the I&M Canal Reserve is being used as a reference point and that the eastern portion of Radke's property, which includes the condemned easement, is part of the TIF district. If the ordinance and accompanying map, when viewed together, fairly apprise the public of the property involved, the description will be considered sufficient. See *In re Annexation to City of Prospect Heights*, 107 Ill. App. 3d 1045, 1049, 438 N.E.2d 574, 577 (1982).

Based upon the foregoing, we affirm the trial court's determination that the condemned easement located on Radke's property is within the TIF district boundaries. Therefore, the trial court did, in fact, have subject-matter jurisdiction over the condemnation proceedings.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of La-Salle County is affirmed.

Affirmed.

BRESLIN and LYTTON, JJ., concur.