THE BOARD OF EDUCATION, PLEASANTDALE SCHOOL DISTRICT No. 107, Cook County, Plaintiff-Appellee, v. THE VILLAGE OF BURR RIDGE, Defendant-Appellant.

First District (3rd Division) No. 1—02—0363

Opinion filed June 30, 2003.

Richard F. Friedman, of Neal, Mudock & Leroy, L.L.C., of Chicago, for appellant.

Champ W. Davis, Jr., and Margaret F. Woulfe, both of Davis, Mannix & McGrath, of Chicago, for appellee.

JUSTICE HALL delivered the opinion of the court:

On September 28, 1998, defendant-appellant, the Village of Burr Ridge (Village), adopted ordinances numbers 854, 855, and 856, establishing a tax increment financing (TIF) district, along with a redevelopment plan and project, for approximately 85 acres of vacant land (Subject Property) located within the Burr Ridge Corporate Park

in Burr Ridge, Illinois. It is undisputed that this tract of land is located in one of the wealthiest communities in Illinois.

On February 16, 1999, plaintiff-appellee, the Pleasantdale School District No. 107 (School District), filed a complaint for injunctive and declaratory relief against the Village. In the complaint, the School District claimed that the Village's ordinances did not comply with the provisions of the Tax Increment Allocation Redevelopment Act (TIF Act) (65 ILCS 5/11—74.4—1 *et seq.* (West 1994)), because the Village's legislative findings made in the ordinances that the statutory criteria necessary to establish the Subject Property as a blighted area were met was erroneous and not supported in fact. The School District claimed that if the TIF ordinances were implemented and the attendant redevelopment plan and project allowed to proceed, the School District and other overlying taxing districts would be irreparably harmed by the illegal and improper diversion of tax revenues from their taxing districts. The School District sought an order declaring that the ordinances were void as a matter of law and an injunction preventing the Village from implementing the ordinances and selling bonds or undertaking any obligations or making expenditures pursuant to the ordinances.

On March 15, 2000, the trial court entered an order denying the Village's motion for summary judgment. Thereafter, on September 17, 2001, the trial court entered an order granting the School District's motion for summary judgment on the ground that the Subject Property did not contain any of the blighting factors necessary to qualify it for TIF designation under the TIF Act. The trial court subsequently denied the Village's motion for rehearing to allow introduction of alleged new facts. The Village now appeals from the trial court's entry of summary judgment in favor of the School District and from denial of its motion for rehearing.

On appeal, the Village contends that: (1) the trial court erred in finding that the Subject Property did not contain any of the blighting factors necessary to qualify it for TIF designation under the TIF Act; (2) the trial court's "but-for" finding was in error; (3) in ruling on the School District's motion for summary judgment, the trial court erred by considering evidence that after the Village adopted the ordinances establishing the TIF district, two new developments were commenced in the proposed TIF district without the aid of TIF financing; and (4) the trial court erred by denying the Village's motion for rehearing to introduce newly discovered evidence. For the reasons that follow, we affirm.

## FACTUAL BACKGROUND

The relevant facts are not in dispute. The Subject Property

consists of approximately 85 acres of vacant land located immediately south of Interstate 55 and east of the County Line Road interchange, which divides Cook and Du Page Counties. The Village of Burr Ridge lies in both counties, but the Subject Property lies solely in Cook County. There is no dispute that establishing the Subject Property as a TIF district would enable the Village to more rapidly develop the Subject Property by allowing the Village to provide various financial incentives to selected developers to offset the higher Cook County commercial real estate taxes.

Prior to the present litigation, the Village had been advised that the Subject Property did not qualify as a TIF district. Steven Stricker, the Village administrator, sent a memo dated December 8, 1995, to the Village president and board, stating that he had spoken with Phil McKenna from the consulting firm of Kane, McKenna & Associates in order to "once again discuss the possibility of implementing a T.I.F. District in the Burr Ridge Corporate Park." In the memo, Stricker informed the Village that, "[a]fter reviewing the statutes we have determined once and for all that the Village of Burr Ridge would not be eligible to implement a T.I.F. District on the Corporate Park property."

Approximately two years later, Stricker sent a memo dated February 13, 1998, to the Village's economic development committee, informing the committee that developer Richard A. Barton sought to develop a Radisson Hotel and Conference Center (Burr Ridge Inn) on the Subject Property. The memo stated that Barton and his attorney had suggested that due to the tax disparities between Cook and Du Page Counties, the Village should look into the possibility of qualifying the Subject Property as a TIF district. The memo went on to remind the committee that, "[o]n at least three occasions over the past 8 years, the Village of Burr Ridge has looked seriously into the possibility of creating a Tax Increment Financing District for the Burr Ridge Corporate Park and, on all three occasions, the consultants hired to look into this issue determined that the Village did not qualify. The last discussion of this issue was in the fall of 1995."

Thereafter, the economic development committee recommended that the Village consider creating a TIF district for the Subject Property in order to create parity between Cook and Du Page Counties real estate taxes. The committee generated a chart illustrating the inequities of the tax structure between commercial property in Cook County and Du Page County, showing that businesses locating in Cook County pay almost double in taxes what they would pay in Du Page County. On April 13, 1998, the Village accepted Barton's request and awarded Camiros, Ltd., a contract to prepare a TIF eligibility study and a redevelopment plan and project for the Subject Property.

The Camiros eligibility study was undertaken in April and May 1998, and completed in July 1998. The Camiros study found that pursuant to the TIF Act, growth and development of the Subject Property had been impeded by four blighting factors: diversity of ownership, flooding, obsolete platting, and tax delinquencies. After reviewing the Camiros study, the Village's legal counsel sent a letter dated July 10, 1998, to the Village president stating, "[i]n our opinion, this is a 'good' TIF in that it will encourage desired development which will be in the best interests of the Village and all of the underlying taxing districts. However, at the same time it is our opinion that this is a 'weak' TIF in terms of meeting the required statutory criteria. The reason for this opinion is that compliance with each of the statutory criteria identified in the Camiros report appears to be rather marginal."

On August 3, 1998, a joint review board hearing was convened to determine whether the four blighting factors identified in the Camiros eligibility study were present on the Subject Property. The hearing was attended by representatives from some of the taxing districts that would be affected by the proposed TIF. At the conclusion of the hearing, the board found by a formal vote that the eligibility factors necessary to establish the Subject Property as blighted under the TIF Act were not present.

On September 14, 1998, a public hearing was held regarding the proposed TIF district. On September 28, 1998, the board of trustees of the Village voted to adopt ordinances numbers 854, 855, and 856, establishing a TIF district and a redevelopment plan and project for the Subject Property.

## ANALYSIS

### I. TIF Act—Statutory Blighting Factors

■ On January 10, 1977, the TIF Act became effective in Illinois. See *People ex rel. City of Canton v. Crouch*, 79 Ill. 2d 356, 360, 403 N.E.2d 242 (1980). The Illinois legislature adopted the TIF Act to provide municipalities with the means to eradicate blighted conditions by developing or redeveloping areas so as to prevent the further deterioration of the tax bases of these areas and to remove the threat to the health, safety, morals, and welfare of the public that blighted conditions present. 65 ILCS 5/11—74.4—2(a), (b), (c) (West 1994); *People ex rel. City of Canton*, 79 Ill. 2d at 360; *Castel Properties, Ltd. v. City of Marion*, 259 Ill. App. 3d 432, 433-34, 631 N.E.2d 459 (1994); *Board of Education of Community High School District No. 218 v. Village of Robbins*, 327 Ill. App. 3d 599, 602, 765 N.E.2d 449 (2001). The TIF Act enables a municipality to eliminate blighted conditions exist-

ing within its boundaries by allowing the municipality to collect real property tax increment revenues from local taxing districts such as schools, park, sanitary and fire districts located within the TIF district and divert these revenues to fund TIF development projects or other ancillary expenses within the TIF district. 65 ILCS 5/11—74.4—2(a), (c), 11—74.4—3(t) (West 1994); *People ex rel. City of Canton,* 79 Ill. 2d at 369; *Henry County Board v. Village of Orion,* 278 Ill. App. 3d 1058, 1060, 663 N.E.2d 1076 (1996). In essence, TIF allows a municipality to use incremental tax dollars or public funds to fund redevelopment of blighted areas.

■ To be eligible for tax increment allocation financing, a municipality must first establish that the proposed redevelopment area meets the statutory criteria for designation as a "blighted area," a "conservation area," or a combination thereof or an "industrial park conservation area." 65 ILCS 5/11—74.4—3(a), (b), (c), (d), (n) (West 1994). In the present case, the issue concerns whether the Subject Property qualifies as a "blighted area." Here, the Subject Property consists entirely of vacant land. Before vacant land can be deemed blighted, a number of statutory blight factors must be established, some of which are not applicable under the factual circumstances in this case. See 65 ILCS 5/11—74.4—3(a) (West 1994).

■ Under the facts in this case, in order for the Subject Property to be deemed blighted, the Village was required to establish that the growth and development of the property as a taxing district was impaired by a combination of two or more statutory blight factors. These blight factors are: "obsolete platting of the vacant land; diversity of ownership of such land; tax and special assessment delinquencies on such land; flooding on all or part of such vacant land; deterioration of structures or site improvements in neighboring areas adjacent to the vacant land." 65 ILCS 5/11—74.4—3(a) (West 1994). The Village also claimed that the Subject Property should be deemed blighted on the ground that immediately prior to becoming vacant it qualified as a blighted improved area under the statute. Thus, under the factual circumstances in this case, the Subject Property would be eligible for TIF financing if at least two or more of the blight factors were established or the Subject Property qualified as a blighted improved area before becoming vacant.

■ The Village first contends that in granting the School District's motion for summary judgment, the trial court failed to give appropriate deference to the Village's legislative findings in the ordinances and erroneously ignored the ordinances' presumed validity. We must reject this contention.

The Village confuses the effect of a presumption with the standard

of judicial review in the circuit court. See *Reed-Custer Community Unit School District No. 255-U v. City of Wilmington*, 253 Ill. App. 3d 503, 508, 625 N.E.2d 381 (1993), citing to *In re Estate of Kline*, 245 Ill. App. 3d 413, 424, 613 N.E.2d 1329 (1993) (stating that, "[o]nce a party introduces sufficient evidence to rebut a presumption, the 'bubble bursts' and the presumption disappears"). In the instant case, based upon the findings supporting the Village's ordinances, presumptions existed that the Subject Property was blighted, had not been subject to growth and development through private investment, and would not reasonably be anticipated to develop without TIF financing. Once the School District introduced evidence to the contrary, the presumptions vanished from the case. *Reed-Custer*, 253 Ill. App. 3d at 508.

The record indicates that the trial court was fully aware of the standard of deference given to a municipality's legislative findings made in an ordinance. For example, in denying the Village's motion for summary judgment, the trial court's order stated, "[a]lthough great deference is given to municipalities in enacting TIF legislation, if summary judgment were granted in this case, it is difficult to imagine a situation where it would be inappropriate." On these facts, it is clear that the trial court took into consideration the presumption set forth by the Village. See *City of Aurora v. Navar*, 210 Ill. App. 3d 126, 131, 568 N.E.2d 978 (1991).

The Village next contends that the trial court erred in granting the School District's motion for summary judgment where the conflicting expert opinion testimony created issues of fact regarding whether the four statutory blighting factors were established. In addition, the Village maintains that there is a genuine issue of fact regarding whether the Subject Property qualified as a blighted area before it became vacant. Again, we must reject the Village's contentions.

█ The purpose of summary judgment is not to try a question of fact, but to determine whether any genuine issues of material fact exist that would preclude the entry of judgment as a matter of law. *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 421, 781 N.E.2d 249 (2002). A motion for summary judgment should be granted only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1998). A triable issue of fact exists where there is a dispute regarding a material fact or where, although the facts are not in dispute, reasonable minds might differ in drawing inferences from those undisputed facts. *Wortel v. Somerset Industries, Inc.*, 331 Ill. App. 3d 895, 899, 770 N.E.2d 1211 (2002). In

ruling on the motion, the trial court is required to construe all evidentiary material strictly against the movant and liberally in favor of the nonmovant. *Tolve v. Ogden Chrysler Plymouth, Inc.*, 324 Ill. App. 3d 485, 489, 755 N.E.2d 536 (2001). Appellate review of an order granting summary judgment is *de novo*. *Rice v. Board of Trustees of Adams County, Ill.*, 326 Ill. App. 3d 1120, 1122, 762 N.E.2d 1205 (2002).

■ ■ In the present case, the trial court, in ruling on the School District's motion for summary judgment, was required to interpret various provisions of the TIF Act and weigh the conflicting expert opinion testimony regarding whether the Subject Property was blighted within the meaning of the TIF Act. Interpreting or construing a statute is a question of law properly resolved in a summary judgment proceeding. *American National Bank v. Powell*, 293 Ill. App. 3d 1033, 1038, 691 N.E.2d 1162 (1997). With regard to expert witnesses, the trial court is in the best position to resolve conflicts in their testimony. *City of Marseilles v. Radke*, 307 Ill. App. 3d 972, 977, 718 N.E.2d 1052 (1999). Moreover, an expert's opinion is only as valid as the basis and reasons for that opinion. *Wilson v. Bell Fuels, Inc.*, 214 Ill. App. 3d 868, 875, 574 N.E.2d 200 (1991). "When there is no factual support for an expert's conclusions, his conclusions alone do not create a question of fact." *Wilson*, 214 Ill. App. 3d at 875-76.

In the instant case, the facts did not support the Village expert's opinion testimony that four statutory blight conditions existed on the Subject Property. The Village asserted that four statutory blighting factors existed on the Subject Property: diversity of ownership, flooding, obsolete platting, and tax delinquencies. In support of these assertions, the Village presented the Camiros eligibility study and the expert testimony of urban planner John Brancaglione. To counter the Village's assertions, the School District presented the expert testimony of urban planner Theodore R. Johnson, who in turn relied on the guidelines promulgated by the Illinois Department of Revenue as set forth in the 1988 TIF compliance manual (TIF guide).[1]

At oral argument, counsel for the Village argued that if a municipality's legislative body found any evidence supporting the presence of a statutory blight factor, this would be sufficient evidence of that factor under the TIF Act. We disagree. The Department of Revenue guidelines suggest that the qualifying statutory blighting factors should be present to a meaningful extent and reasonably distributed throughout a proposed TIF district so that reasonable

---

[1]The TIF guide is commonly relied on by experts and courts in interpreting the TIF Act. See *Henry County Board*, 278 Ill. App. 3d at 1063.

persons will conclude that public intervention is necessary. *Henry County Board*, 278 Ill. App. 3d at 1063. In the instant case, the following analysis shows that none of the four qualifying statutory blighting factors at issue were present to a meaningful extent on the Subject Property.

## A. *Obsolete Platting*

■ Under the TIF Act, obsolete platting is one of the relevant factors in determining whether vacant land is blighted within the meaning of the Act. 65 ILCS 5/11—7.4—3(a)(1) (West 1994). The TIF guide defines obsolete platting of vacant land as follows:

> "Obsolete platting of vacant land would include parcels of limited or narrow size and configuration or parcels of irregular size or shape that would be difficult to develop on a planned basis and in a manner compatible with contemporary standards and requirements."

The Subject Property consists of seven vacant parcels ranging in size from approximately 3 acres to 31 acres. At his deposition, the Village's expert, Brancaglione, testified that the Subject Property satisfied the obsolete platting criterion for blighted property because two of the seven parcels were too large. Brancaglione conceded that these large parcels could be readily subdivided, but opined that this was not a reasonable solution because it would be inconvenient and expensive to accomplish.

In an affidavit dated January 1, 2000, the School District's expert, Theodore R. Johnson, averred that the Subject Property was not affected by obsolete platting. He stated that the two parcels at issue were not of limited or narrow size and were accessible from Frontage Road. He further stated that the fact that these parcels had not been subdivided into smaller parcels did not represent an impediment to development. In addition, at the joint review board hearing, Jeanne Lindwall of Camiros, who spoke at the hearing in support of the Village's redevelopment plan, agreed that the Subject Property was not currently the victim of obsolete platting and that she had no evidence indicating that obsolete platting interfered with the development of the Subject Property.

The trial court determined that Brancaglione's opinion regarding obsolete platting ignored the definition set forth in the TIF guide. The trial court stated that if Brancaglione's opinion were given any weight, "one would have to accept the conclusion that the entire country is blighted."

■ The facts in this case do not show that obsolete platting interfered with the development of the Subject Property. No evidence was presented that the shape or size of the parcels at issue ever interfered with the economic development of the Subject Property.

## B. *Diversity of Ownership*

██ The TIF Act also identifies diversity of ownership as one of the relevant factors in determining whether vacant land is blighted within the meaning of the Act. 65 ILCS 5/11—7.4—3(a)(1) (West 1994). The TIF guide defines diversity of ownership of vacant land as follows:

> "Diversity of ownership of vacant land refers to a situation where different ownerships and interests in the land are sufficient in number to retard or impede the ability to assemble the land for development meeting contemporary development standards."

In this case, there are two owners of the Subject Property. The Bank of Montreal owns six parcels, totaling approximately 50 acres. Mr. Avgeris owns one parcel, totaling approximately 31 acres. Thus, the diversity of ownership issue actually relates to only the single parcel.

At his deposition, Brancaglione testified that there was diversity of ownership on the Subject Property within the meaning of the TIF Act because the seven tax parcels within the Subject Property were held by two different owners, each with different land use objectives. Brancaglione testified that since the bank obtained its six parcels in a foreclosure, it might want to quickly sell this property, whereas since the owner of the single parcel obtained it for investment purposes he might want to hold on to this property, and therefore these two divergent interests could potentially create an impediment to development of the Subject Property. Brancaglione, however, acknowledged that this scenario would create a potential impediment to only one portion of the Subject Property, since if the bank was in a hurry to sell its six parcels this would actually encourage development. Brancaglione also conceded that he had never been involved with any eligibility studies under the TIF Act wherein diversity of ownership was found based upon just two owners.

In finding that the presence of two owners was insufficient to create diversity of ownership with respect to the Subject Property, the trial court determined that Brancaglione's opinion testimony regarding diversity of ownership based upon two owners ignored the definition of "diversity of ownership" contained in the TIF guide. The trial court concluded that Brancaglione's opinion testimony on this issue was entitled to no weight, noting that on one hand Brancaglione argued that the Subject Property should have more owners of smaller parcels to avoid the obsolete platting problem, while on the other hand in relation to the diversity of ownership issue, he argued that two owners were too many. The trial court determined that such contradictory testimony was entitled to no weight. We agree.

██ As previously pointed out, the Bank of Montreal owns six

parcels and Mr. Avgeris owns one parcel. Thus, the diversity of ownership issue actually relates to only a single parcel. Such diversity does not satisfy the TIF guide on diversity of ownership, which "refers to a situation where different ownerships and interests in the land are sufficient in number to retard or impede the ability to assemble the land for development meeting contemporary development standards." No evidence was presented that the two ownership interests in this case have impeded the economic development of the Subject Property.

Moreover, the alleged diversity in this case does not satisfy the standard announced in the TIF guide, which requires that the factors causing blight be present to a meaningful extent and reasonably distributed throughout a proposed TIF district so that reasonable persons will conclude that public intervention is necessary. *Henry County Board*, 278 Ill. App. 3d at 1063. For example, in *Castel Properties*, the appellate court affirmed a trial court finding that diversity of ownership under the TIF Act was not met where 90% of the subject property was owned by one entity. *Castel Properties*, 259 Ill. App. 3d at 441. In the present case, out of seven parcels, Mr. Avgeris owns a single parcel, totaling approximately 31 acres. On these facts, diversity of ownership is not present with respect to the Subject Property.

The Village also maintains that diversity of ownership is a potential blighting factor because, under an annexation agreement, the two owners must agree to any land use changes proposed within the Subject Property. We must reject this argument. Neither the TIF guide, TIF Act, nor case law recognizes potential disagreements between two land owners under an annexation agreement as a blighting factor. Moreover, the TIF Act does not provide a means to eliminate this potential factor. The Village contends that the TIF Act would offer a solution to the potential problems the annexation agreement might create, since the TIF Act authorizes the exercise of condemnation in designated TIF districts. However, under the TIF Act, a municipality can only bring an eminent domain action against a property located within a TIF district. 65 ILCS 5/11—74.4—4(c) (West 1994); *City of Marseilles*, 307 Ill. App. 3d at 974. Here, the trial court determined that the statutory requirements for the Subject Property to be classified as a blighted area under the TIF Act had not been met. Consequently, the Village could not authorize acquisition of the Subject Property pursuant to its eminent domain powers under the TIF Act because the trial court determined that the Subject Property did not qualify as a blighted area. In the instant case, neither the presence of two owners nor the annexation agreement created the necessary type of diversity of ownership that would hinder the economic development of the Subject Property under the TIF Act.

## C. *Flooding*

 Under the TIF guide, evidence to support a finding of flooding on all or part of the vacant land may be derived from "municipal engineering records, U.S. Army Corps of Engineers or other federal or State agency documents, and other secondary source information which satisfactorily documents the condition of flooding." In the present case, evidence indicates that portions of the proposed TIF district are located in a floodplain. However, the only report of flooding regarding the Subject Property came from a 1933 report by the Department of Corrections which indicated that some flooding occurred on the property in the 1930s, more than 50 years before the Burr Ridge Corporate Park was developed.

The evidence shows that the Subject Property was developed as part of the Burr Ridge Corporate Park in the early 1980s by EMRO, a unit of the Marathon Oil Company. The EMRO development included, among other things, sewers and infrastructure improvements relating to drainage and flood detention. The Subject Property contains a storm water management easement around the retention areas that was designed to account for the 100-year flood plain.

In concluding that there was sufficient evidence of flooding to support a finding of blight with respect to the Subject Property, the Village relied on Brancaglione's opinion that if any portion of the Subject Property appeared on a FEMA (Federal Emergency Management Agency) or FIRM (Flood Insurance Rate Map) floodplain map, the flooding criterion of the TIF Act was satisfied. The evidence, however, reveals that the floodplain maps Brancaglione relied on in forming his opinion had not been updated to reflect drainage improvements on the Subject Property.

In addition, the TIF guide does not provide that the inclusion of property on a flood map is *per se* evidence of flooding. Rather, the TIF guide provides that evidence of flooding may be derived from secondary source information that satisfactorily documents the condition of flooding. Here, the floodplain maps did not document any conditions of flooding on the Subject Property and the maps did not include several drainage improvements on the Subject Property. The TIF guide refers to conditions of flooding and not the mere possibility of future flooding.

Moreover, the single reported incident of flooding occurring on or near the Subject Property during the 1930s was not sufficient to support a finding of blight with respect to the Subject Property. For example, in *Castel Properties*, the reviewing court affirmed the trial court's finding that there was insufficient evidence of flooding so as to constitute a blighting factor, where there was only a single instance of

flooding involving a small number of acres and there was no record evidence that the flooding ever interfered with the ongoing farm operation on the property. *Castel Properties*, 259 Ill. App. 3d at 441. In the instant case, no evidence was presented that conditions of flooding impeded the development of the Subject Property. If there were such evidence, it is highly unlikely that Barton would have chosen to construct his hotel near the detention ponds that were installed on the Subject Property in 1984.

### D. *Tax Delinquencies*

Under the TIF Act, tax and special delinquencies on a parcel of vacant land is one of the relevant factors in determining whether the parcel of land is blighted within the meaning of the Act. 65 ILCS 5/11—74.4—3(a)(1) (West 1994). In regard to tax and special delinquencies, the TIF guide provides that "[e]vidence of nonpayment of real estate property taxes and/or special assessments for an unreasonable period of time must be shown to document the presence of this factor. This could also include evidence of forfeiture."

The TIF guide does not specify the period of time tax delinquencies must exist on a property before the time period becomes "unreasonable" under the TIF Act. Furthermore, we do not attempt to define the precise boundaries of what is or is not a reasonable time. Nonetheless, in this case, no evidence was presented that the previous tax and special assessment delinquencies on the Subject Property existed for an unreasonable period of time. In addition, no evidence was presented that the previous tax delinquencies impaired the development of the Subject Property. Rather, the evidence shows that no tax delinquencies existed on the Subject Property at the time the Village enacted the TIF ordinances.

Brancaglione opined that he did not believe that tax delinquencies were required to currently exist on the Subject Property on the date the ordinances were adopted before this blight factor could be established. In Brancaglione's opinion, the "history" of tax delinquencies indicated that, absent TIF intervention, the Subject Property would continue to stagnate and future tax delinquencies would occur. Brancaglione, however, fails to address the fact that there is no evidence that the previous tax delinquencies existed for an unreasonable period of time as required by the TIF guide. More importantly, he fails to account for the fact that no evidence was presented that the previous tax delinquencies impaired the development of the Subject Property.

### E. *Qualified as Blighted Before Becoming Vacant*

Alternatively, the Village maintains that the Subject Property

was properly designated as a TIF district because it qualified as a blighted area before it became vacant. 65 ILCS 5/11—74.4—3(a)(2) (West 1994). We must reject this contention. The evidence indicates that the buildings which were allegedly blighted before they were razed and the property became vacant were never located on any of the seven parcels that comprise the proposed TIF district. These buildings were part of the Bridewell prison farm and were located south of the proposed TIF district.

## II. But-For Finding

 The trial court also found that development of the Subject Property would occur without the aid of TIF designation. The TIF Act requires a showing that the Subject Property "would not reasonably be anticipated to be developed without the adoption of the redevelopment plan." 65 ILCS 5/11—74.4—3(n)(J)(1) (West 2002). This is the but-for test.

 The Village contends that the trial court's but-for finding was in error because the court failed to consider that the development of property within the proposed TIF district has been stagnated while properties outside the TIF area have continued to develop. The Village is incorrect. An examination of the trial court's order granting the School District's motion for summary judgment shows that the court was aware that economic development in the proposed TIF district had been stagnated. The trial court, however, determined that this stagnation was not attributable to any alleged blighting factors on the Subject Property but, rather, was due to the tax disparities between Cook and Du Page Counties. The trial court also noted that, in spite of the large tax impediment, a 30-screen movie complex and a residential townhome development had been proposed for the Subject Property but were denied by the Village planning commission after a large number of residents actively campaigned against the two projects.

The record shows that the absence of TIF financing did not discourage other developers from being interested in the Subject Property. For example, a company called Care Matrix was willing to proceed with a development on 19 acres of the Subject Property without TIF financing. Moreover, the course of development in the area immediately surrounding the Subject Property supports the trial court's finding that the lack of development on the Subject Property is due to the tax disparities between Cook and Du Page Counties rather than any statutory blighting factors. The record shows that during the early to mid 1990s, three banks, two office buildings and a restaurant were developed in the immediate area of the Subject Property. The record also shows that Barton proceeded with his project before the Village actually adopted the ordinances establishing the TIF district.

Given the evidence showing that developers were interested in the Subject Property without TIF financing and the evidence that growth and development were occurring in the immediate area of the Subject Property, there is no basis in the record to overturn the trial court's finding that the Village failed to meet the but-for test articulated in the TIF Act. See *Castel Properties*, 259 Ill. App. 3d at 442-43 (affirming the trial court's finding that the city therein failed to meet the but-for test, highlighting the extensive evidence of growth and redevelopment occurring in the area and noting that a project was being developed without the TIF issue having been determined).

### III. Trial Court's Consideration of Postordinance Developments

██ The Village next contends that in ruling on the School District's motion for summary judgment, the trial court erred by considering evidence that after the Village adopted ordinances establishing the TIF district, two new developments were commenced in the proposed TIF district without the aid of TIF financing. We disagree. When a court considers new information regarding a motion for summary judgment, " 'the court must apply the same standards employed when the motion was considered for the first time, and determine the presence or absence of a genuine issue of material fact.' " *Gatlin v. Ruder*, 137 Ill. 2d 284, 293, 560 N.E.2d 586 (1990), quoting *In re Estate of Garbalinski*, 120 Ill. App. 3d 767, 771, 458 N.E.2d 1065 (1983). In the instant case, there is no evidence that in ruling on the School District's motion for summary judgment, the trial court employed an incorrect standard when it considered evidence that developments occurred without TIF financing in the proposed TIF district after the Village adopted the ordinances establishing the TIF district.

### IV. Village's Motion for Rehearing

██ Lastly, the Village argues that the trial court erred in denying its motion for rehearing to introduce newly discovered evidence. Again, we disagree. In order to justify a hearing based on new evidence, a party must demonstrate that the evidence is of such conclusive or decisive character as to make it probable that a different judgment would be reached. *Patrick Media Group, Inc. v. City of Chicago*, 255 Ill. App. 3d 1, 8, 626 N.E.2d 1066 (1993). The decision to grant or deny a motion for rehearing or reconsideration rests within the discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *Patrick Media Group*, 255 Ill. App. 3d at 8.

██ In its motion for rehearing, the Village sought to present evidence that two developments that were proposed after the Village enacted the ordinances establishing the TIF district failed due to the

lack of TIF financing. This "new" evidence is not so conclusive that it probably would have changed the result of the summary judgment motion. The trial court granted the School District's motion for summary judgment on the ground that the Subject Property did not contain any of the blighting factors necessary to qualify it for TIF designation under the TIF Act. Consequently, the fact that the two developments might have failed due to a lack of TIF financing added nothing to the Village's opposition to the motion for summary judgment. The trial court did not abuse its discretion in denying the Village's motion for rehearing.

Accordingly, for the reasons set forth above, the judgments of the circuit court of Cook County are affirmed.

Affirmed.

SOUTH, P.J., and WOLFSON, J., concur.