2015 IL App (2d) 141175
No. 2-14-1175
Opinion filed October 16, 2015

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| HENRY SULLIVAN and VERNETTE SULLIVAN, | ) ) | Appeal from the Circuit Court of Lake County. |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | No. 12-CH-687 |
| | ) | |
| PEGGY KANABLE, KEN KANABLE, and JAN KANABLE, | ) ) | Honorable |
| | ) | Luis A. Berrones, |
| Defendants-Appellants. | ) | Judge, Presiding. |

_____

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Jorgensen and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiffs, Henry and Vernette Sullivan, filed a two-count complaint in the circuit court of Lake County against defendants, Peggy, Ken, and Jan Kanable. According to the complaint, the Sullivans own and occupy a parcel of residential lakefront property on McGreal Lake in Antioch. Peggy Kanable owns an adjacent parcel of property on the lakefront to the west. She and her parents, Ken and Jan Kanable, live on the property. In count I of their complaint, the Sullivans sought to determine the boundary between the two parcels. In count II, the Sullivans sought to enjoin the Kanables from discharging untreated wastewater from their property into the lake. In an earlier appeal taken pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26. 2010), we

affirmed a summary judgment in favor of defendants on count II. *Sullivan v. Kanable*, 2014 IL App (2d) 140321-U, ¶ 2. Thereafter, following a bench trial, the trial court entered judgment in plaintiffs' favor on count I. Defendants now appeal from that judgment, arguing that it is against the manifest weight of the evidence. We affirm.

¶ 2 Brian Lee, a licensed surveyor, testified on behalf of plaintiffs. Lee testified that he was the owner of the surveying firm of R.E. Allen and Associates. Lee had been a licensed surveyor since 2005. In August 2011, plaintiffs contacted Lee and requested that he conduct a survey of the property. According to Lee, Henry Sullivan expressed concern about the west property line. Henry "mentioned that there was an issue with the property next door being staked on the west boundary line." Plaintiffs provided a legal description of the property indicating that it is situated in section 4 of township 46 north, range 10 east, of the third principal meridian. According to the legal description, the southeast corner of plaintiffs' land is located on the south line of section 4 at a point 674.87 feet west of the southeast corner of section 4. Lee testified that he located the monument marking the southeast corner of section 4. Measuring along the south line, he found an iron rod placed in the ground 674.91 feet west of that marker. According to the legal description, the southern boundary of plaintiffs' property begins at that point and proceeds west along the southern line of section 4 for a distance of 658.23 feet to the east line of the west half of the east half of section 4. Lee's testimony indicates that the point thus described—the southwest corner of plaintiffs' property—is located in the lake to the south of plaintiffs' land.

¶ 3 To determine the location of that corner, Lee (1) located a monument identifying the south quarter corner of section 4; (2) ascertained the distance between the south quarter corner and the southeast corner of section 4; and (3) divided that distance by two. According to the legal description, the western boundary of the property runs north along the east line of the west

half of the east half of section 4 for a distance of 685.4 feet to the center line of State Line Road "as formerly located." Lee identified the east line of the west half of the east half of section 4 as a line running from the southwest corner of plaintiffs' property to the midpoint of the north line of the quarter section in which the property is located. Lee found a monument at the northeast corner of the quarter section. He did not find a monument at the northwest corner of the quarter section, but he was able to locate that corner based on prior surveying work in the area. Lee's measurement of the distance along that line from the southwest corner of plaintiffs' property to what had once been the center line of State Line Road conformed to the legal description.

¶ 4 Lee testified that, after completing the field work and preparing a plat of survey, he contacted Ed Peklay, who had previously conducted a survey of defendants' property. Peklay's survey placed the eastern boundary of defendants' property east of the western boundary of plaintiffs' property as determined by Lee's survey. Peklay had placed an iron rod near the edge of the lake. According to Lee's testimony, that marker was 19.1 feet to the east of the western boundary of defendants' property. In other words, according to Lee's survey, that marker was 19.1 feet into plaintiffs' property. However, the northwest corner of plaintiffs' property, according to Lee's survey, was at essentially the same point as the northeast corner of defendants' property, according to Peklay's survey.

¶ 5 Upon reviewing Peklay's survey, Lee expanded his own to include defendants' property and two parcels to the west of defendants' property. He found corner markers on the west side of defendants' property and measured distances between those markers and the east line of the west half of the east half of section 4. The distances did not conform to the legal description of defendants' property. Similarly, the property lines staked out for the two parcels to the west of defendants' property did not conform to the applicable legal descriptions.

¶ 6    Lee testified that he spoke with Peklay. Peklay indicated that the corners he found on the west line of defendants' property and on the parcels to the west of defendants' property matched the occupation lines of the property. Lee offered the opinion that his own survey (not Peklay's) established the correct boundary line between plaintiffs' property and defendants'. On cross-examination, however, Lee indicated that his method of surveying the property and Peklay's were both acceptable in the surveying profession. He agreed with defendants' attorney's statement that "one [method] is not necessarily more correct than the other."

¶ 7    Peklay testified for defendants that he was asked to survey their property in 2011. Defendants needed a survey because they were planning to build an addition to their house. Pelkay testified that he found monuments—specifically, iron pipes—on the west line of the property. He also found "a corner or two" at the northeast corner of the property. He found no monument at the southeast corner near the lake. He added that the area was "swampy" and that the monument might never have been set or might have been washed away. Peklay further noted that there were "fence lines, occupation lines" on the west side of defendants' property. Peklay stated that occupation lines are important in surveying land because they are "what the owners come to rely on as to be in their property." Peklay testified that, according to what he had been taught in continuing professional education programs, "[o]ccupation takes precedence over measurements."

¶ 8    Peklay tried to verify the position of the stakes on the west side of defendants' property in relation to the section lines and other adjoining parcels of land. He discovered that "the measurements from the section corners would not agree with the occupation." Peklay testified, "Based on the occupation, I held the west line of the parcel went over 400 feet which agreed with a very old survey that the client provided to me also." Peklay then "set a corner that was on the

line off of the water's edge." It appears to be undisputed that, in relation to the boundary determined by Lee's survey, the corner that Peklay set near the water's edge is about 19 feet into plaintiffs' property.

¶ 9    The trial court concluded that the survey conducted by Lee, based on what the court referred to as the "measurement methodology," was preferable to the "occupation methodology" that Peklay used. The court added, however, that "[t]he occupation methodology would be acceptable to this Court if in this case the Court was not required to make a determination which will possibly affect other property lines." The court entered declaratory judgment for plaintiffs that the boundary between the parties' properties was as shown by Lee's survey.

¶ 10    Defendants argue that the trial court's decision is against the manifest weight of the evidence. It is well established that "[a] trial court's factual determinations will not be overturned on appeal unless they are contrary to the manifest weight of the evidence." *City of Marseilles v. Radtke*, 307 Ill. App. 3d 972, 976 (1999). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *Best v. Best*, 223 Ill. 2d 342, 350 (2006). In applying the manifest-weight-of-the-evidence standard, "[a] reviewing court will not substitute its judgment for that of the trial court regarding the credibility of witnesses, the weight to be given to the evidence, or the inferences to be drawn." *Id.* at 350-51.

¶ 11    We preface our consideration of the evidence presented at trial with a brief summary of certain general principles of land surveying (gleaned, in part, from scholarly writing on the subject) that are germane to the issue in this appeal. It has been observed that "[c]onservation and perpetuity of boundary lines is the primary aim of the law of boundaries." Robert J. Griffin, Comment, *Retracement and Apportionment as Surveying Methods for Re-establishing Property*

*Corners*, 43 Marq. L. Rev. 484, 484 (1960) (hereinafter Griffin). When establishing boundaries described using the public land survey system, "[t]he monuments set by the original U.S. survey establish township, section and quarter section lines; and, the method prescribed by Congress for the division of quarter sections into fractional parts controls the location of such fractional lines." *Id.* at 489. Under federal law, "the corners of half- and quarter-sections, not marked on the surveys, shall be placed as nearly as possible equidistant from two corners which stand on the same line." 43 U.S.C. § 752 (2012).

¶ 12    A reviewing court in a sister state has explained the roles played by a surveyor retained by a private client:

> "First, the surveyor can, in the first instance, lay out or establish boundary lines within an original division of a tract of land which has theretofore existed as one unit or parcel. In performing this function, he is known as the 'original surveyor' and *when his survey results in a property description used by the owner to transfer title to property* that survey has a certain special authority in that the monuments set by the original surveyor on the ground control over discrepancies within the total parcel description and, more importantly, control over all subsequent surveys attempting to locate the same line.
>
> Second, a surveyor can be retained to locate on the ground a boundary line which has theretofore been established. When he does this, he 'traces the footsteps' of the 'original surveyor' in locating existing boundaries. Correctly stated, this is a 'retracement' survey, not a resurvey, and in performing this function, the second and each succeeding surveyor is a 'following' or 'tracing' surveyor and his sole duty, function and power is to locate on the ground the boundaries [*sic*] corners and boundary line or lines established by the original survey; he cannot establish a new corner or new line terminal

point, nor may he correct errors of the original surveyor. He must only track the footsteps of the original surveyor. The following surveyor, rather than being the creator of the boundary line, is only its discoverer and is only that when he correctly locates it." (Emphasis in original.) *Rivers v. Lozeau*, 539 So. 2d 1147, 1150-51 (Fla. Dist. Ct. App. 1989).

Although boundaries arising from the conveyance of land are determined with reference to the intention of the grantor, as expressed in the instrument of conveyance, "[t]he highest and best proof of this intention, ordinarily, lies not in the words of expression of the deed, but rather, in the work upon the ground itself, where the survey was made prior to the conveyance." Griffin, *supra*, at 495.

¶ 13    The boundaries for a given parcel might or might not all be created simultaneously. Thus, "[a] grantee who purchases the entire extent of particular lands owned by the grantor determines boundaries of his purchase as of the time that the particular parcel was carved out of some larger tract." *Id.* at 488. On the other hand, "[a] grantee purchasing only part of the lands of his grantor will determine the *common boundaries* as of the time of the conveyance, while he will determine the *boundaries on the perimeter* of the grantor's original tract with reference to the time that they were created." (Emphases added.) *Id.* Accordingly, "[e]ach line of the same parcel must be considered separately, and a determination of the proper surveying method to be used must be made with respect to each line of the parcel." *Id.*

¶ 14    Mindful of these principles, we conclude that the trial court's decision to rely on Lee's survey to establish the boundary is not against the manifest weight of the evidence. Defendants argue that Peklay's methodology was superior to Lee's. Defendants note that "a surveyor's job is not to re-establish a property line; rather, a surveyor's job is to retrace the original steps of the

original surveyor." According to defendants, "that is precisely what Mr. Peklay did, and that is the reason why occupation holds over measurements." Defendants' argument is not persuasive. First, Peklay did not provide a complete explanation of the supposed principle that occupation controls over measurements. We note that the legal description for defendants' property specifies the place of beginning as the southeast corner of the west half of government lot 1. From there, defendants' east property line is described as proceeding along the east line of the west half of government lot 1 for a distance of 685.4 feet. (This description corresponds exactly to the description of the west property line of plaintiffs' property.) The property-line descriptions proceed counterclockwise (*i.e.* east property line to north property line to west property line to south property line). The south property line is described as running east along the south line of the section for a distance of 400 feet *to the place of beginning*. Here, Peklay resolved an apparent discrepancy between the occupation line on the west and the described measurements of the property by repositioning *the place of beginning set forth in the legal description of defendants' land*, so that the described dimensions of the property remained unchanged. But if, as Peklay testified, occupation lines control over measurements, it is unclear why those dimensions should not have yielded.

¶ 15    As noted, the original survey of a given parcel "control[s] over all subsequent surveys attempting to locate the same line." *Rivers*, 539 So. 2d at 1151. We acknowledge that an occupation line might be of value in setting the boundary between the properties on either side of *that* line. Occupation lines might also correspond to improvements on property. "The evidentiary value of improvements depends upon the probability that their builders had, at the time of construction[,] a better means of knowing where the original lines were located than is now available." Griffin, *supra*, at 500. The evidentiary value in determining other boundaries

seems doubtful, however. As noted, "[e]ach line of the same parcel must be considered separately, and a determination of the proper surveying method to be used must be made with respect to each line of the parcel." *Id.* at 488. The record does not indicate *when* various boundaries were established or whether they were originally created by common parties, so it is difficult to conclude that the boundary between the parties' properties was created with reference to, or should be controlled by, the boundary between defendants' property and property on the west side of defendants' property.

¶ 16 Lee located the boundaries of defendants' property, pursuant to the legal description of the property, with reference to government survey monuments and a properly placed marker for the point of beginning. There is no indication that the boundaries measured in accordance with the legal description conflicted with any occupancy lines on or adjacent to plaintiffs' property. Nor is there any indication that the measurements conflicted with any other controlling element. There is no indication that Lee made any mistake in measuring the distance from the section corner to the place of beginning on the southeast corner of the property. Nor is there any indication that Lee made any mistake in measuring the distance from that point to the southwest corner of the property. As noted, Peklay essentially located the place of beginning without reference to government survey markers, instead placing it at a location that would accommodate the occupation line on the west of the property with the described 400-foot measurement of defendants' south property line. Under the circumstances, this method appears to be arbitrary and inferior to alternative methods of determining the place of beginning of defendants' land.

¶ 17 For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

¶ 18 Affirmed.